Hillsborough,
No. 5316.

STATE

*v.*

EDWARD H. COOLIDGE, JR.

Argued January 8, 1965.
Decided March 11, 1965.

188

*William Maynard*, Attorney General, *Alexander J. Kalinski*, Assistant Attorney General, and *Emile R. Bussiere*, county attorney (*Mr. Kalinski* orally), for the State.

*J. Murray Devine* (now deceased), *Matthias J. Reynolds* and *John A. Graf* (*Messrs. Reynolds* and *Graf* orally), for the defendant.

LAMPRON, J. On January 13, 1964, Pamela Mason, a young girl residing in Manchester, disappeared from her home and eight days later, on January 21, 1964, her body was found. On January 28, 1964, Sergeant Doyon and Officer LeClair called at defendant's home, of which he was the sole owner, and where he lived with his wife, Joanne, aged twenty-seven, and their two-year-old daughter. In the presence of his wife, these police officers questioned him relative to "his whereabouts, his actions and activities on January 13th." The Trial Court found that Coolidge "showed them some guns at that time, which Mrs. Coolidge saw being shown to them. The police at that time did not take the guns or request the guns." Officer LeClair asked the

defendant if he was willing to take a lie-detector test. Coolidge said "he was" and "he would prefer to take it on a Sunday."

February 2, 1964, the following Sunday, Officer LeClair telephoned the defendant about taking such a test. Coolidge came to the Manchester police station about one in the afternoon. About four, in the company of two police officers, he went to the State Police headquarters in Concord to take a lie-detector test. There was testimony that in the course of this test the defendant admitted the theft of some three hundred dollars from his employer; and that on the way back to Manchester, where they arrived about seven, the defendant had some conversation with an officer as to whether he would be charged with the theft. He was not formally charged therewith until two-thirty the following morning, February 3, 1964. The Trial Court found that defendant's "presence both at the police station and in the car to and from Concord was, at least up to this point, voluntary." The Court further found that defendant "never at any time, requested an opportunity to leave the station prior to being charged, but that had he requested it he probably would have been detained either with a formal charge or without a formal charge being made."

The Court found that on February 2, 1964, before the trip to Concord for the test "Mrs. Joanne Coolidge . . . who had been informed of the requested presence of Edward . . . [her husband] at the police station, was called for . . . about two-thirty, by two policemen who took her in a police car to the station, where she had a short conversation with . . . Captain Stipps of the police force . . . [in which] she alleges and he agrees that he urged her to tell the truth or she might be in trouble if she didn't. She returned to her home in a 1963 Chevrolet, a motor vehicle owned by her husband."

At ten-thirty that same evening of February 2, 1964, Sergeant McBain, of the State Police, and Inspector Glennon, of the Manchester police, called at the Coolidge home. The Trial Court found that the officers "went to the house generally for the purpose of questioning Mrs. Coolidge . . . about the theft from Cote Brothers, and further particulars about the Mason murder, on which both . . . were generally assigned. . . . At this time the police and investigating authorities had no knowledge of the exact calibre or type of weapon that they were looking for, it being generally the theory of the police at that time that the weapon might very well be a small handgun or revolver." Ser-

geant McBain testified that he did not know of the prior visit to the Coolidge home by other officers on January 28, 1964.

McBain and Glennon, both dressed in plain clothes, identified themselves as police officers and Mrs. Coolidge "let them into the house." Defendant's mother, who was babysitting there, left shortly thereafter at the request of the officers. The Trial Court found further that "Mrs. Coolidge was almost immediately informed by the police that her husband was in trouble because of the larceny and that it was doubtful if he would return that night." "In the course of their questioning they inquired if Mr. Coolidge . . . had any firearms. They were informed by Mrs. Coolidge that he had, and she went, in company with them, into the bedroom, to a closet where there were four guns — two shotguns and two rifles." "McBain and Glennon, with the consent of Mrs. Coolidge took the four guns and certain items of clothing from the house" and gave her a receipt for them.

"At the request of the defendant the Court would find that Mrs. Coolidge . . . had no knowledge of any constitutional rights, either by explanation of the police or otherwise, to deny the police the right to examine these, but finds that at that point Mrs. Coolidge fully·intended to cooperate with the police in every way and to furnish them freely with both information and guns in order, as she stated, to clear her husband of any suspicion." The Court also found that the "officers that called at the Coolidge residence on February 2, 1964 . . . acted courteously in every manner."

Article 19th, Part I of the Constitution of New Hampshire provides that "Every subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." It also recites the "formalities" required for the issuance of search warrants.

The Fourth Amendment to the Constitution of the United States reads as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The provisions of the Fourth Amendment are enforceable against the states through the Due Process Clause of the Fourteenth Amendment and all evidence obtained by searches and seizures in violation thereof is inadmissible in a state court.

*Mapp* v. *Ohio*, 367 U. S. 643, 655; *Ker* v. *California*, 374 U. S. 23, 30. However if the evidence in question is not obtained by search and seizure but is voluntarily handed to the police officers these constitutional guarantees are not involved. *State* v. *Nelson*, 105 N. H. 184, 191; *United States* v. *Pate*, 324 F. 2d 934, 935 (7th Cir. 1963); *State* v. *Morris*, 243 S. C. 225, 234. As to the four guns and certain items of defendant's clothing which the officers took from the Coolidge residence on the night of February 2, 1964, the Trial Court specifically found "that there was no search by the police of the premises at this time by either Sergeant McBain or by Inspector Glennon." The Court further found that these officers took those objects "with the consent of Mrs. Coolidge." The Trial Court also found "as a fact that during the latter part of January and the early part of February the police were questioning many people and from time to time had taken various weapons, with the consent of the people, to be examined, in the vicinity of Manchester."

I. A search ordinarily implies, a quest by an officer of the law, a prying into hidden places for that which is concealed. A seizure contemplates forcible dispossession of the owner. *Weeks* v. *United States*, 232 U. S. 383, 397; *United States* v. *Pate*, 324 F. 2d 934, 935 (7th Cir. 1963); *People* v. *Woods*, 26 Ill. 2d 557; *State* v. *Baron*, 106 N. H. 149. The Trial Court properly found on the evidence that the principal purpose of the visit to defendant's residence by officers McBain and Glennon on the evening of February 2, 1964, "was in connection with the Mason Murder" and "in the pursuit of what must be considered as a very general investigation of the Mason Murder."

McBain and Glennon testified as follows: Dressed in plain clothes they knocked at the side door of the Coolidge house, identified themselves as police officers and were invited in by defendant's wife. They all sat in the living room. Out of courtesy, they told Mrs. Coolidge that it was very possible that her husband would be detained in the station that evening. They told her that as part of their investigation of the Mason case guns owned by various other persons had been taken for tests. She stated they had four guns in the house. When she went to the bedroom closet to get the guns, they went with her. They "did not look into the closet, or feel around" and they did not look around any of the other areas of the house except where they were invited.

These officers further testified that Mrs. Coolidge said she had

nothing to hide and had no objection to the officers taking these four guns along for tests. Also that she pointed out some of her husband's clothing and inquired if it might be something they were looking for and had no objection to their having them. They testified further that Mrs. Coolidge appeared to be very calm and very cooperative and that they had a cup of coffee with her.

Mrs. Coolidge testified that when she asked the officers if they wanted the guns one said "No" and the other said "We might as well take them" and she said "If you would like them, you may take them."

The evidence warranted the Trial Court's finding that "there was no search by the police of the premises"; and that "Mrs. Coolidge fully intended to cooperate with the police in every way and to furnish them freely with both information and guns in order, as she stated, to clear her husband of any suspicion."

On the facts and circumstances of this case it is our opinion that the four guns and certain objects of defendant's clothing obtained from his residence on the night of February 2, 1964, by officers McBain and Glennon were not secured by search and seizure. On the contrary they were voluntarily shown and given to them by Mrs. Coolidge without coercion on their part and were taken away by the officers with her consent. Consequently they were not obtained in violation of the Constitution of our state or that of the United States and are not subject to being returned to the· defendant and are admissible in evidence if found relevant and material at the trial. *State* v. *Nelson*, 105 N. H. 184, 191; *United States* v. *Pate*, 324 F. 2d 934, 935 (7th Cir. 1963); *State* v. *Morris*, 243 S. C. 225, 234. See *Brown* v. *State*, 372 P. 2d 785 (Alaska 1962).

II. When the two officers left the Coolidge residence about 11:15 P.M. that night, the Trial Court found that "they told Mrs. Coolidge and she did not, at least, object, that they proposed to look in the two automobiles which were parked in the driveway. Mrs. Coolidge gave them the keys to the cars for this purpose. From approximately 11:15 P.M. to 11:30 P.M. Sergeant McBain and Inspector Glennon conducted a search of the two automobiles. Mrs. Coolidge remained in the house during this period of time. During this period of time they took certain items from the motor vehicles."

"The Court finds that on February 2, 1964, Mrs. Coolidge

knew that some items were being taken but did not know specifically what items were being taken, and did not specifically agree to those items being taken. She was not given a list of these items nor a receipt for them."

The Trial Court made the further findings which like the previous are supported by the record: "The Court finds that at no time on February 2nd did the police request permission of Edward H. Coolidge, Jr. to search or take items from his house or cars, and that at· no time on February 2nd or 3rd did the police inform Edward H. Coolidge, Jr. that they had taken items from his house or cars. The Court finds, however, that Edward H. Coolidge, Jr. at about 2:30 A.M. on February 3rd saw the guns and clothing at the police station at the time he was being charged with the theft of the three hundred dollars.

"The Court finds that Mrs. Coolidge received no specific permission from Edward H. Coolidge, Jr. to give or surrender any items of property to the Police.

"The Court finds that all during the period covered by the testimony on this motion, Mr. and Mrs. Coolidge were living in the home as husband and wife, with their child, and that she, as his wife, was entitled to occupy the premises." The Court also found that "Mr. Coolidge was the sole owner of said premises subject to his wife's right of dower.

"The Court finds that Mrs. Coolidge, Jr. is an extremely thin, nervous woman at the present time, and that, assuming her condition is not greatly dissimilar today than what it was then, she would have been more nervous than a normal person of her age.

"The officers that called at the Coolidge residence on February 2, 1964, were dressed in plain clothes and acted courteously in every manner in the pursuit of what must be considered as a very general investigation of the Mason murder."

As appears previously the Trial Court stated it would find on request that Mrs. Coolidge had no knowledge of any constitutional right to deny the police the right to examine any objects and found that "Mrs. Coolidge fully intended to cooperate with the police in every way."

Finally the Court found "that there was a search of the two automobiles and a taking of items, and there is a question as to whether or not it was done with the proper consent or a waiver of constitutional rights."

The law is clear that searches of automobiles must meet the test of reasonableness under the Fourth Amendment before evidence obtained thereby is admissible. *Preston* v. *United States*, 376 U. S. 364, 366. The reasonableness of a search and seizure should not be solved solely by reference to general rules or to concepts of authority, agency or privity. *Stoner* v. *California*, 376 U. S. 483, 488. In the last analysis, the question of the validity of a given search and seizure must be determined by reference to whether that particular search and seizure was reasonable or unreasonable, and that determination must be made on a case-to-case basis in the light of the surrounding facts and circumstances. *United States* v. *Cook*, 213 F. Supp. 568, 571 (E. D. Tenn. 1962); *United States* v. *Roberts*, 223 F. Supp. 49, 59 (E. D. Ark. 1963); *Roberts* v. *United States*, 332 F. 2d 892, 895 (8th Cir. 1964); *Ker* v. *California*, 374 U. S. 23, 33.

There is a conflict in the decisions as to whether in a particular case a husband can assert his constitutional rights to protection from unreasonable search and seizure to prevent the product of a search consented to by his wife from being used in evidence against him. See *Stein* v. *United States*, 166 F. 2d 851 (9th Cir. 1948); *United States* v. *Rykowski*, 267 Fed. 866 (S. D. Ohio, 1920); *State* v. *Cairo*, 74 R. I. 377; *Dalton* v. *State*, 230 Ind. 626; *Bellam* v. *State*, 233 Md. 368; *Commonwealth* v. *Wright*, 411 Pa. 81; *People* v. *Palmer*, 31 Ill. 2d 58; Annot. 31 A.L.R. 2d 1091 as supplemented. There being no "fixed formula" for application in specific cases of the constitutional prohibition against unreasonable searches and seizures such conflicts are bound to arise as each case is decided on its own facts and circumstances. *Mapp* v. *Ohio*, 367 U. S. 643, 653; *Ker* v. *California, supra*, 32, 33. We proceed therefore to an examination in this case 1) of the conduct of the police officers; 2) the control of defendant's wife over these automobiles; 3) the nature of her consent and the manner in which it was obtained; 4) all other material facts and circumstances.

The two automobiles searched by the officers were a 1951 Pontiac two-door sedan and a 1963 Chevrolet convertible, both parked in the driveway of the residence owned by the defendant. Both cars were registered in his name as owner. Sergeant Mc-Bain testified that their inspection of these vehicles was "with the permission, and with the keys which were given to us by

Mrs. Coolidge," defendant's wife. He testified further that he brought back the keys to Mrs. Coolidge who was in the kitchen and told her what articles they were taking. Inspector Glennon testified that they went out to the cars after asking the permission of defendant's wife to do so and that they took certain items found therein. Mrs. Coolidge testified that the officers asked if they could check the vehicles and "I went to the kitchen and got the keys to the cars and gave them the keys, and they went out." She further testified that the officers were out there about fifteen minutes and "one came back with the keys, and then they left." She also testified that she had driven home that afternoon one of the cars which her husband had taken to go to the police station earlier.

Defendant and his wife were married January 15, 1961. At this time, they were living as husband and wife with their child in the home in the driveway of which the two cars searched by the officers were parked. Mrs. Coolidge had the keys to both of these automobiles and it could be found that she was licensed to operate them. The cars were within her view from the kitchen window of her home when the officers were inspecting them. It can be found and ruled on these facts that defendant's wife had equal right and control with her husband over these vehicles, and under the circumstances existing at 11:15 in the evening of February 2, 1964 when they were searched, that she had exclusive physical possession and control over them. *People* v. *Dominguez*, 144 Cal. App. 2d 63, 65; 47 Am. Jur., Searches and Seizures, *s.* 72, *p.* 548, and supp. *s.* 72, *p.* 76.

The defendant maintains that his wife's consent was not freely and intelligently given but was obtained by coercion and through misrepresentation. To support this position, he points to, among other facts, the Trial Court's finding that "Mrs. Coolidge, Jr. is an extremely thin, nervous woman at the present time, and that, assuming her condition is not greatly dissimilar today than what it was then, she would have been more nervous than a normal person of her age would have been."

The Trial Court also found, however, that the officers acted courteously in every manner and that "Mrs. Coolidge . . . did not, at least, object," when they proposed to look in the two automobiles. There was testimony from both officers that on this night of February 2, 1964, she was "very cooperative," "very calm" and "rational" and that they had coffee with her.

They were dressed in plain clothes, identified themselves as police officers and were invited in by defendant's wife. They told her that her husband would not be home that night because "he was in serious trouble." Although denied by her, the officers testified that they told Mrs. Coolidge that in their investigation of the Mason case they took items "such as guns and so forth" for examination. The Trial Court found that the police had taken various weapons for examination with the consent of the many people they were questioning. The evidence did not compel a finding, nor did the Trial Court find, that the officers told defendant's wife any falsehoods as was the case in *Commonwealth* v. *Wright*, 411 Pa. 81 and *United States* v. *Reckis*, 119 F. Supp. 687. There was no evidence that they pretended to act under the authority of a search warrant as in *Cofer* v. *United States*, 37 F. 2d 677 (5th Cir. 1930) and *United States* v. *Rykowski*, 267 Fed. 866 (S. D. Ohio, 1920), cited by the defendant.

The Trial Court properly found that "at that point Mrs. Coolidge fully intended to cooperate with the police in every way . . . to clear her husband of any suspicion." Unlike the situation in *Nelson* v. *United States*, 208 F. 2d 505 (D.C. Cir. 1953) and *Ray* v. *United States*, 84 F. 2d 654, 656 (5th Cir. 1936) it would be "in accordance with human experience" (*cf. Nelson* v. *United States, supra,* 513) for a wife in this frame of mind to freely and intelligently consent to the search of the automobiles and to the taking of items found. This would be especially true in this case where on January 28, 1964, less than a week previously, the defendant in the presence of his wife, in their home, produced guns for examination by two other police officers. On that occasion these officers requested permission from the defendant to look in his cars "and he came outside with us and assisted us in going through the cars, and we examined both cars and opened the trunks, and we opened the glove compartments."

We are of the opinion that the record supports the following conclusions: 1) There was no duress or coercion or stealth or fraud in the conduct of the officers in obtaining the consent of defendant's wife to the search of the two automobiles; 2) her consent was freely and intelligently given; 3) her conduct in giving permission to search these two automobiles parked in the driveway of their home and to which she had the keys was the normal action of a wife. *Holt* v. *State*, 17 Wis. 2d 468; 4) the conduct of the officers in the search was not ruthless or

highhanded as in *Mapp* v. *Ohio*, 367 U. S. 643 (see *State* v. *Louden*, 15 Utah 2d 64), or unfair, unreasonable or oppressive. *United States* v. *Roberts*, 223 F. Supp. 49, 59, *aff'd* 332 F..2d 892 (8th Cir. 1964).

We hold therefore that under all the facts and circumstances of this case (*Ker* v. *California*, 374 U. S. 23, 33) the search of these two automobiles was not unreasonable or unlawful. *Stein* v. *United States*, 166 F. 2d 851 (9th Cir. 1948); *Roberts* v. *United States*, 332 F. 2d 892 (8th Cir. 1964); *People* v. *Perroni*, 14 Ill. 2d 581 (*cert. denied* 359 U. S. 980); *People* v. *Hughes*, 183 Cal. App. 2d 107; *Bellam* v. *State*, 233 Md. 368; *State* v. *Shephard*, 124 N. W. 2d 712 (Iowa 1963); *People* v. *Palmer*, 31 Ill. 2d 58.

III.    The defendant also moved to suppress as evidence certain items seized pursuant to four search warrants issued February 19, 1964, on the ground that these warrants were illegally issued and the items unlawfully obtained in deprivation of his constitutional rights.

The Trial Court found that all four search warrants were "issued on February 19, 1964, all at approximately the same time, and all approximately at the same time that the warrant for the arrest was issued for the murder of Pamela Mason."

"These warrants . . . were for search of the premises owned by Mr. Coolidge, Jr., at 312 Seames Drive, a laundermat at 712 Valley Street, and the two automobiles — one a Pontiac and the other a Chevrolet. The search warrants all enumerated the same items to be looked for in each place, and the returns show various things collected from each place. The Court finds that the search warrants were issued by the Attorney General, acting as a justice of the peace, and it is agreed that the Attorney General was in charge of the investigation of the Mason case.

"It is further found that the complaints for the search warrants were drafted by the Attorney General's office, and Chief McGranahan, who signed all of them as complainant, made oath before William Maynard, a justice of the peace. No evidence was offered by either the State or the defendant at this time as to what, if any, evidence was offered in addition to the complaints, prior to the issuance of the warrants.

"The Court finds that the laundermat was searched during the forenoon of February 20th, the house was searched after two P.M. on February 20, 1964, the Pontiac on Friday, February 21st, and the Chevrolet also on February 21st. The Mason

warrants were served at eight P.M., on February 19, 1964, to arrest Coolidge on a charge of murder."

The defendant maintains that these warrants are defective for want of a neutral and detached magistrate and because they contain no facts from which probable cause could be found.

The Fourth Amendment of the Federal Constitution provides that "No warrants shall issue, but upon probable cause, supported by oath or affirmation." Article 19th, Part I of the Constitution of New Hampshire provides that "all warrants to search suspected places, or arrest a person for examination or trial in prosecution for criminal matters are contrary to this right [to be secure from all unreasonable searches and seizures] if the cause or foundation of them be not previously supported by oath or affirmation."

The standard for obtaining a search warrant under the Fourth Amendment is enforced against the states through the Fourteenth Amendment. *Aguilar* v. *Texas*, 378 U. S. 108. To meet constitutional requirements the warrants in this case had to be issued upon probable cause supported by oath and affirmation. *Giordenello* v. *United States*, 357 U. S. 480, 485. Probable cause exists where the facts and circumstances within the officer's knowledge, and of which he had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Carroll* v. *United States*, 267 U. S. 132, 162; *Chin Kay* v. *United States*, 311 F. 2d 317, 320 (9th Cir. 1962). Rule 4 of the Federal Rules of Criminal Procedure provides that for the issuance of a federal warrant for arrest it must appear from the complaint "that there is probable cause to believe" that an offense has been committed by the defendant. Rule 41 regulating the issuance of federal search warrants provides in section (c) that a warrant shall issue only on affidavit sworn to before the judge or commissioner and only if he "is satisfied that grounds for the application exist or that there is probable cause to believe that they exist."

However state laws relating to arrests and searches have not been obliterated in favor of federal law. *Ker* v. *California*, 374 U. S. 23, 31. The states are not precluded "from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the states provided that those rules do not violate the constitutional proscription of unreasonable searches

and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain." *Id.*, 34. Furthermore "the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract." "Affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion." "Courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *United States* v. *Ventresca*, 85 S. Ct. 741, 746.

RSA 595:1 provides that "A justice or municipal court may issue a warrant for searching any place therein described, in the day time, upon complaint, under oath, that it is believed that a person liable to arrest for a crime is concealed therein . . . or that any property or thing of any of the following kinds is concealed therein." The statute then enumerates certain types of property not applicable here and then provides "VI. The subject matter of any offense not herein specially mentioned."

Each of the four search warrants in issue was executed by the chief of police of Manchester under oath and addressed to William Maynard, a justice of the peace. Each contained a complaint charging that on the 13th day of January, 1964, the defendant committed an assault upon Pamela Mason with a deadly weapon, a gun, described therein, and also made an assault upon her with a deadly weapon, a knife, causing wounds described therein which resulted in her death. Each warrant listed certain objects and things used in the commission of that offense which the complainant had probable cause to believe were kept and concealed in four separate locations specifically and separately described in each warrant: premises at 312 Seames Drive; a 1951 Pontiac vehicle; a 1963 Chevrolet convertible; a laundromat at 712 Valley Street in Manchester.

Neither side offered testimony as to what evidence was presented to the justice before the warrants were issued. The defendant maintains that a proper determination of probable cause could not be made by a magistrate who is the Attorney General of the state, in whose office the complaints were drawn, who took the complainant's oath as justice of the peace, and who is required by virtue of his office to act as attorney for the State in a crime of this type. RSA 7:6; *Wyman* v. *Danais*, 101 N. H. 487.

We hold that on its face each of these warrants complied with

the requirements of RSA 595:1 regulating the issuance of such search warrants in this state. The sworn complaint in each warrant was not based on mere suspicion or belief but rather on an affirmation under oath by the chief of police of Manchester that the defendant had committed the crime of murder. It also contained his sworn statement that he had probable cause to suspect that certain objects used in the commission of this crime were concealed at the named location. In addition thereto the Attorney General, who acted as justice, stated at the hearing on this motion to suppress that there was other oral evidence presented to him when issuing the warrants. In the absence of evidence to the contrary, it could be found thereon that probable cause existed to justify their issuance. *Chin Kay* v. *United States*, 311 F. 2d 317, 320 (9th Cir. 1962); *Conti* v. *Morgenthau*, 232 F. Supp. 1004 (S.D. N.Y. 1964); 47 Am. Jur., Searches and Seizures, *s.* 22, *p.* 516.

Furthermore there is no evidence in the record requiring a finding that William Maynard, the Attorney General, could not perform, as a justice of the peace, the functions required of a "justice" by RSA 595:1. Nor is there any evidence in the record requiring a finding that William Maynard, as justice, could not judge for himself the persuasiveness of the facts relied on to show probable cause or that he did not find probable cause from facts or circumstances presented to him under oath or affirmation by the chief of police. In the absence of such evidence it must be assumed that having issued the warrant the justice had sufficient basis to find probable cause in conformity with the constitutional requirements. *Anderson* v. *State*, 192 Wis. 352; *Aguilar* v. *Texas*, 378 U. S. 108.

Consequently on this preliminary motion to suppress, the defendant, as the moving party, had the burden of proving that the evidence was illegally obtained. *Murray* v. *United States*, 333 F. 2d 409, 411 (10th Cir. 1964); 20 Am. Jur., Evidence, *s.* 396, *p.* 357; 79 C.J.S., Searches and Seizures, *s.* 98, *p.* 917; 7 Vill. L. Rev. 407, 435. In such a hearing the State was not required to disclose its entire case to prove that probable cause to issue the warrants existed. *United States* v. *Pardo-Bolland*, 229 F. Supp. 473, 478 (S.D. N.Y. 1964); *State* v. *Laconia District Court*, 106 N. H. 48. If at the trial the State offers evidence secured under these warrants and it is challenged, then, as stated in its brief, the State will have the burden of presenting evidence to the Trial Justice of facts in existence when the war-

rants were issued which established to the magistrate the probable cause upon which their issuance was based. *Beck* v. *Ohio*, 379 U. S. 89; *United States* v. *Ventresca*, 85 S. Ct. 741.

IV. Lastly the defendant maintains that the items taken under these warrants were evidentiary in nature and not seizable. *Harris* v. *United States*, 331 U. S. 145. In the absence of statutory restriction it is usually held that any property may be seized which will furnish proof of the crime. 47 Am. Jur., Searches and Seizures, *s.* 54, *p.* 534; 4 Wharton's Criminal Procedure, *s.* 1569. Rule 41 of the Federal Rules of Criminal Procedure lists certain types of property which can be seized under a federal search warrant among which is property "designed or intended for use or which is or has been used as the means of committing a criminal offense." (b) (2). However our statute (RSA ch. 595) is not as limited in this respect and provides for the seizure of specified kinds of property including: "VI. The subject matter of any offense not herein specially mentioned." RSA 595:1 VI. We hold that the items acquired under the search warrants were the type of property which could be sought and seized by search warrant under the laws of this state. See *State* v. *Chinn*, 231 Ore. 259, 276-279. If these items are offered in evidence the State, as previously stated, will have the burden of proving that they were described in the warrant or seizable thereunder. See *Johnson* v. *United States*, 293 F. 2d 539, 540 (D.C. Cir. 1961); *Palmer* v. *United States*, 203 F. 2d 66, 67 (D.C. Cir. 1953).

The test is always whether the search and seizure under the facts and circumstances of the case was unreasonable. *United States* v. *Pardo-Bolland, supra; United States* v. *Ventresca, supra*, 746. These search warrants were issued simultaneously with the issuance of a warrant to arrest the defendant on a charge of murder. When the searches were made the defendant had been arrested for murder. There is nothing in the record to indicate that the arrest or the search warrants were being used merely as pretexts for the purpose of conducting a general exploratory search with the sole aim of finding evidence to connect the defendant with some crime. *Leahy* v. *United States*, 272 F. 2d 487, 491 (9th Cir. 1959); *United States* v. *Guido*, 251 F. 2d 1 (7th Cir. 1958). There is no basis in the record to find that these searches were unreasonable or in violation of any constitutional provision.

The procedure followed by the Trial Justice on his motion

to suppress of making findings of fact and transferring to this court all questions of law was proper and authorized under RSA 491:17.

Defendant's exceptions are overruled and the case is remanded to the Superior Court for disposition in accordance with this opinion.

*Remanded.*

All concurred.