STATE OF NORTH CAROLINA v. RONALD EARL SMALL

No. 36

(Filed 15 December 1977)

1. **Criminal Law § 75.2— confession—no threats or promises by officers—admissibility**

Evidence was sufficient to support the trial court's conclusion that an in-custody statement of defendant was made freely and voluntarily where defendant contended that officers told him he was lying and one officer offered to intercede with the judge in his behalf; the officers specifically denied any such conduct; the officers read defendant his rights and he waived them before any interrogation took place; one of the officers told defendant that he could not "buy" one of his statements and defendant was then told that he should tell the truth; and when defendant's family arrived at the police station shortly after interrogation began, interrogation ceased and defendant's family was permitted to visit privately with him for about thirty minutes.

2. **Arrest and Bail § 3.1— warrantless arrest—probable cause—bloody defendant at scene of crime**

Defendant's arrest was not illegal where a police officer observed a person on the morning of the murder wearing bloody clothing within 200 feet of the place where the beaten, bloody victim was later discovered; the officer made a tentative identification of defendant from a high school annual; he and other officers proceeded to defendant's home where he observed the same person he had seen earlier that morning; at approximately the same time he saw blood spotted clothing similar to that worn by this person when he saw him in the early hours of the day; officers asked defendant to accompany them to the police station and he agreed; and officers then handcuffed defendant.

State v. Small

3. **Criminal Law § 75.8— Miranda warnings given—break in interrogation —repetition of warnings unnecessary**

Failure of police officers to repeat *Miranda* warnings after a thirty minute break in the interrogation of defendant did not render defendant's confession inadmissible, since the subsequent interrogation took place thirty minutes later in the same room, was conducted by the same officers, and concerned the same subject matter as the original interrogation; and there was no evidence that defendant was emotionally or mentally unstable or that he was unaware of his constitutional rights during the latter interrogation.

4. **Homicide § 20; Searches and Seizures § 1— clothing in plain view—clothing. given to officers voluntarily—evidence properly admitted**

The trial court did not err in denying defendant's motion to suppress evidence relating to clothing taken from his residence where the evidence tended to show that the clothing of defendant was voluntarily given to officers by members of defendant's family and that some of the clothes were in plain view of the officers and were properly taken without any search.

5. **Jury § 6— voir dire examination of prospective jurors—failure to record—no prejudice shown**

The trial judge should have permitted the recording of the voir dire examination of prospective jurors so that defendant would have been in a position to make pertinent portions of that examination a part of the record for possible appellate review; however, the record does not contain an exception to the trial judge's ruling on the motion to record the voir dire examination, nor has defendant shown any prejudice resulting from a prospective juror's unamplified statement that he knew defendant because of his involvement in another incident.

6. **Criminal Law § 111.1— credibility and weight to be given confession—general instructions sufficient**

Though the trial court, upon defendant's request, should have charged the jury that if it found that defendant did make a confession, then the jury should consider all of the circumstances under which it was made in determining whether the confession was truthful and the weight the jury would give to it, defendant was not prejudiced by such failure, since the court did instruct the jurors that they were the sole judges of the weight to be given any evidence; they were the sole judges of the credibility of all the witnesses; and they should depend on their own recollection of the evidence and the argument of counsel in reaching their verdict.

7. **Criminal Law § 113.3— failure to give instruction—no request—no error**

Failure of the trial judge to include testimony concerning the victim's blood type in his summary of the evidence did not constitute prejudicial error, since such testimony did not concern a substantive feature of the case, and defendant's counsel did not call the omission to the attention of the trial judge even when he inquired of defense counsel if there were other requested instructions.

8. **Homicide § 31.1— felony murder—separate punishment for felony improper**

In a prosecution for first degree murder and assault with intent to commit rape, sentence imposed in the assault with intent to commit rape case is arrested, since the State proceeded on the theory that the victim was killed by defendant during an assault upon her with intent to commit rape, and a defendant who is convicted upon the theory of the felony murder rule cannot be punished separately for the commission of the underlying felony.

APPEAL by defendant from *Walker, S.J.*, 10 January 1977 Criminal Session of LENOIR County Superior Court.

Defendant was charged in separate bills of indictment with the first degree murder of Alexandria Elizabeth Hill and assault with intent to commit rape upon Alexandria Elizabeth Hill. He entered pleas of not guilty to each charge and the cases were consolidated for trial.

Upon call of the case for trial, the trial judge conducted a single *voir dire* hearing upon defendant's pretrial motion to suppress defendant's in-custody statements and evidence concerning items of clothing taken from his residence. We summarize the evidence offered on the *voir dire* hearing.

Officer Johnny Sharpless testified that he saw defendant between the hours of 4:00 and 4:30 a.m. on 12 September 1976 at the driveway of Sampson School in Kinston, North Carolina. He observed blood on defendant's jacket, trousers, socks and tennis shoes, and in response to the officer's inquiries, defendant told him that he had been in a fight with Leroy King. The officer then told defendant to get off the streets.

The witness was recalled to the school area about 6:55 a.m. and upon arrival he found a person, later identified as Alexandria Hill, lying beside the basketball courts which were located about 200 feet from the place where he had earlier talked with defendant. Alexandria Hill was badly beaten and was bleeding from her head. He observed tennis shoe tracks around the area. After calling for an ambulance and assistance, Officers Joyner and Smith joined in the investigation. By looking through some high school annuals, the witness was able to tentatively identify defendant as the man he had talked with earlier in the morning. The officers then proceeded to defendant's home.

To the best of the witness's recollection, it was defendant's mother who led them to the room in which defendant was sleep-

ing. When he entered the room, the witness recognized defendant as the person he had seen earlier in the morning. He also observed a pair of socks with blood on them, and trousers spotted with blood and sand lying at the foot of defendant's bed. Defendant was awakened, and Lieutenant Joyner told defendant they wanted to talk with him at the police station. Defendant agreed to go, and, after the defendant had dressed, the witness handcuffed defendant.

Upon their arrival at the police station, defendant was taken to the detective's room where Lieutenant MacIntosh warned him of his rights and defendant signed a waiver of rights. The witness stated that he had not heard anyone threaten defendant, promise him anything, or in any way coerce defendant into making a statement.

Lieutenant R. E. Joyner testified that he went to defendant's home with Officers Sharpless and Smith. Defendant's mother admitted them into the house, and they asked if they could see her son. She said they could and led them to his bedroom. They did not have a search warrant or a warrant for defendant's arrest since they did not, at that time, intend to arrest defendant. He observed blood stained socks and trousers lying at the foot of defendant's bed. The officer asked defendant if he would go to the police station with them, and defendant agreed to go. Defendant's mother picked up the pants, a shirt and the socks and gave them to the officer. As he was leaving, Lieutenant Joyner observed that Sergeant Smith had a pair of tennis shoes and a jacket in his possession.

Defendant was taken to the detective's office in the police station where they waited for Lieutenant MacIntosh. There was no interrogation until Lieutenant MacIntosh arrived. Upon his arrival, Lieutenant MacIntosh obtained a "rights" form and read it to defendant. The witness stated that he heard defendant say that he did not want a lawyer and that he was willing to answer questions. Defendant then signed a written waiver of rights. At this point, defendant stated that he had been in a fight with a "dude" on Washington Street. Before any further statements were made, defendant's family arrived and they were permitted to privately talk with defendant for a period of about thirty minutes. The interrogation was then resumed, and defendant made an oral and written statement which was, in substance, the

same as his subsequent account of the assault when he testified on *voir dire*.

Lieutenant Joyner further testified that during the time that defendant was being questioned, he appeared to be in possession of his mental faculties; that neither he, nor anyone else in his presence, threatened defendant or held out any hope to induce him to make a statement. He specifically denied that he told defendant that he would intercede with the judge in his behalf if defendant would confess.

Sergeant Kenneth C. Smith and Lieutenant William MacIntosh gave testimony which was, in substance, the same as that of Officers Sharpless and Joyner. Sergeant Smith also specifically testified that Mrs. Small invited them into the house and, at his request, a member of the family gave him defendant's jacket and tennis shoes.

Dr. Page Hudson, an expert pathologist, testified that the proximate cause of Alexandria Hill's death was a brain injury inflicted by a blunt instrument.

Defendant's mother, Mildred Small, testified that her son was 19 years old and that on the morning of 12 September 1976, she was summoned to her front door by a ringing of the doorbell. She let the officers in, and two of them preceded her up the stairs and into defendant's room. After awakening defendant, they obtained some of his clothes, handcuffed him, and took him to the police station. Officer Sharpless, without permission, reached into the closet and obtained clothes belonging to defendant. She later talked to her son at the police station, and he told her that as he was crossing the schoolyard on the morning of 12 September, he saw Alexanderia Hill lying on the ground. He thought she was drunk and lifted her up thereby getting blood stains on his clothing. He left and then encountered Officer Sharpless and falsely told him that he had been in a fight.

Deborah Moore, defendant's sister, testified that she saw one of the officers pull clothes from a closet and from boxes located behind a curtain. She and defendant's father both testified that when they went to the police station, they heard "yelling" and accusations that defendant was lying coming from the room where defendant was being questioned.

Defendant testified that on the morning of 12 September 1976, he encountered Alexandria Hill and they walked to Sampson School. After smoking marijuana, they began to caress each other and, when he attempted to have sexual relations with her, she bit his finger and slapped him. He hit her in the face three or four times with his open hand and left. He returned in about 25 minutes and found her lying in a different place. She was bloody about the face. He left again and upon encountering Officer Sharpless, he falsely told the officer that he was bloody because he had been in a fight.

The next day police officers came to his home and took him to the police station. He was read his "rights" and he understood them. He thereupon understandingly signed a waiver of rights and made a statement to the officers. The statement that he then made was to the same effect as the one that he had related to his mother. Thereafter, when only the two of them were in the interrogation room, Lieutenant Joyner told defendant, " 'Now, we've got everything we need on you; you are just making things hard and if you go on and tell us what happened, I'll see what we can do for you.' Just like that and he said, 'I'll tell the judge that you cooperated with them,' and see what I can do for you." It was then that he made the oral and written statement hereinabove referred to. He stated that, except for the statements made by Lieutenant Joyner and several accusations that he was lying, no one made him any promise or threatened him.

At the conclusion of the *voir dire* hearing, the trial judge overruled defendant's motion to suppress. We will set out the pertinent findings of fact and conclusions of law in our consideration of defendant's assignments of error.

The jury returned to the courtroom, and the State and defendant offered evidence consistent with that heard on *voir dire*.

The jury returned verdicts of guilty of first degree murder and guilty of assault with intent to commit rape. Defendant appealed from judgments imposing sentence of life imprisonment on the murder charge and a concurrent sentence of five years on the charge of assault with intent to commit rape.

*Rufus L. Edmisten, Attorney General, by Roy A. Giles, Jr., Assistant Attorney General, for the State.*

*Robert E. Whitley, for the defendant.*

BRANCH, Justice.

Defendant's first assignment of error is that the trial judge erred in denying his motion to suppress defendant's in-custody statements because they were not understandingly and voluntarily made.

The unquestioned rule in this jurisdiction is that the ultimate test of the admissibility of a confession is whether the confession was, in fact, understandingly and voluntarily made. *State v. Bishop*, 272 N.C. 283, 158 S.E. 2d 511; *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1, *Cert. denied*, 386 U.S. 911. Thus, a confession is involuntary and not admissible into evidence when it is induced by threat, coercion, hope, or promise of reward. *State v. Fox*, 274 N.C. 277, 163 S.E. 2d 492; *State v. Biggs*, 224 N.C. 23, 29 S.E. 2d 121; *State v. Roberts*, 12 N.C. 259. Whether the conduct of an officer amounts to such coercion or promise of reward as would render a subsequent confession involuntary is a question of law reviewable on appeal. *State v. Biggs*, supra.

[1] Defendant contends that his confession was induced by the coercive conduct of the police officers. He relies heavily on *State v. Pruitt*, 286 N.C. 442, 212 S.E. 2d 92, to support his contention. His reliance upon *Pruitt* is misplaced. In *Pruitt*, the *uncontradicted* evidence on the *voir dire* hearing showed that the police officers repeatedly told defendant they knew he committed the crime and that his story had too many holes in it; that he was lying and they did not want to "fool around;" that he was the kind of person who would be relieved to get it off his chest; and that it would be harder on him if he did not go ahead and cooperate.

In the present case, defendant offered evidence to the effect that the officers told him he was lying and that Officer Joyner offered to intercede with the judge in his behalf. The officers specifically denied any such conduct. Furthermore, the contention that defendant was questioned in an oppressively police-dominated atmosphere is tempered by the evidence showing that when defendant's family arrived at the police station interrogation ceased and his family was permitted to visit privately with him for about thirty minutes.

At the conclusion of the *voir dire* in this case, the trial judge, *inter alia*, found the following facts:

7. The defendant on September 12, 1976 was 18 years of age, had completed the 11th grade and was in control of his mental and physical faculties and did not appear to be under the influence of any drugs or intoxicants and that he did appear to be nervous; that during said interrogation and questioning no reward or inducement by any of the said law enforcement officers or hope of reward or inducement was made to the defendant to make any statement or confession;

8. That no threats or show of violence by any of said law enforcement officers were made to persuade or induce the defendant to make any statement of confession;

Based upon the above findings the trial judge concluded:

6. That the statement made by the defendant to said officers on September 12, 1976, and introduced on voir dire as State's Exhibits 2 and 3 were made voluntarily, knowingly and independently;

When the trial judge's findings are supported by competent evidence, they will not be disturbed on appeal even though the evidence is conflicting. *State v. Blackmon*, 280 N.C. 42, 185 S.E. 2d 123; *State v. Bullock*, 268 N.C. 560, 151 S.E. 2d 9. Here there was ample evidence to support the trial judge's findings as to the voluntariness of defendant's confession and the findings in turn support his conclusion that the inculpatory statements were made voluntarily and knowingly. The uncontradicted facts that one of the officers told defendant that he could not "buy" one of his statements and that defendant was then told that he should tell the truth do not constitute a persuasive showing that defendant's will was overborne by these acts of the police officers. *See, State v. Thomas*, 241 N.C. 337, 85 S.E. 2d 300.

[2] Defendant further contends by this assignment of error that the confession evidence was inadmissible because defendant was illegally arrested.

An arrest without a warrant, except as authorized by statute, is illegal. *State v. McCloud*, 276 N.C. 518, 173 S.E. 2d 753. Assuming *arguendo* that defendant was placed under arrest when he was handcuffed in his home, we are of the opinion that such an arrest would have been legal.

G.S. 15A-401(b)(2) in part provides:

Offense Out of Presence of Officer. — An officer may arrest without a warrant any person who the officer has probable cause to believe:

a. Has committed a felony . . . .

In *State v. Harris*, 279 N.C. 307, 182 S.E. 2d 364, a police officer observed the defendant go to a place in the woods where stolen goods were concealed, look around and then leave. This Court held that the police officer had probable cause to believe that the defendant had committed a felony and consequently that both his arrest without a warrant and the ensuing search of his person were lawful. In so holding, Justice Sharp (now Chief Justice) speaking for the Court stated:

Probable cause and "reasonable ground to believe" are substantially equivalent terms. "Probable cause for an arrest has been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. . . . To establish probable cause the evidence need not amount to proof of guilt, or even to prima facie evidence of guilt, but it must be such as would actuate a reasonable man acting in good faith. One does not have probable cause unless he has information of facts which, if submitted to a magistrate, would require the issuance of an arrest warrant." 5 Am. Jur. 2d Arrests Section 44 (1962). "The existence of 'probable cause,' justifying an arrest without a warrant, is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. It is a pragmatic question to be determined in each case in the light of the particular circumstances and the particular offense involved." (Citations omitted.) 279 N.C., at 311.

In the case *sub judice*, a police officer observed a person in the early morning hours of 12 September 1976 wearing bloody clothes within 200 feet of the place where the beaten, bloody victim was later discovered. The officer made a tentative identification of defendant from a high school annual. He and other officers proceeded to defendant's home where he observed the same person he had earlier seen that morning. At approximately the same time, he saw blood spotted clothing similar to those worn by this

person when he saw him in the early hours of the day. These circumstances were sufficient to warrant a reasonable belief that defendant was guilty of the felonious assault on Alexandria Hill. Therefore, defendant's arrest was not illegal.

We hold that defendant's in-custody statements were understandingly and voluntarily made subsequent to a lawful arrest.

By his second assignment of error, defendant avers that the trial judge erred in denying his motion to suppress all statements made by defendant to police officers because he was not properly advised of his constitutional rights.

[3] Defendant admits that, prior to his initial interrogation, he was fully warned as required by *Miranda v. Arizona*, 384 U.S. 436. It is also uncontroverted that he understandingly waived these rights both orally and in writing. His position is that the 25 to 30 minute break in his interrogation when he was permitted to talk with his family was such a time lapse as to require that he be readvised of his *Miranda* rights.

The factors to be considered in determining whether the initial warning became so stale and remote that a substantial possibility exists that a defendant was unaware of his constitutional rights in a subsequent interrogation when proper warnings had previously been given are stated in *State v. McZorn*, 288 N.C. 417, 219 S.E. 2d 201, *modified as to death sentence*, 428 U.S. 904, as follows:

> . . . (1) the length of time between the giving of the first warnings and the subsequent interrogation . . . (2) whether the warnings and the subsequent interrogation were given in the same or different places . . . (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers . . . (4) the extent to which the subsequent statement differed from any previous statements . . . (5) the apparent intellectual and emotional state of the suspect. . . . (Citations Omitted.)

In the case before us, the subsequent interrogation took place within thirty minutes after the initial questioning was recessed. It was conducted in the same room by the same officers and concerned the same subject matter. There was no evidence that

defendant was emotionally or mentally unstable or that he was unaware of his constitutional rights during the latter interrogation. Therefore, the failure of the officers to repeat the *Miranda* warnings did not render defendant's confession inadmissible.

[4] Defendant next assigns as error the denial of his motion to suppress evidence relating to clothing taken from his residence. He argues that the clothing was taken from his home as a result of an illegal search and seizure.

Evidence obtained by an *unreasonable* search and seizure is inadmissible. See, U.S. Const. Amend. IV; N.C. Const. Art. 1, Section 20; *State v. Colson*, 274 N.C. 295, 163 S.E. 2d 376, *Cert. denied*, 393 U.S. 1087. However, it is now well settled that when evidence is delivered to a police officer upon request and without compulsion or coercion, the constitutional provisions prohibiting unreasonable search and seizure are not violated. *U.S. v. Pate*, 324 F. 2d 934, *Cert. denied*, 377 U.S. 937; *State v. Coolidge*, 106 N.H. 186, 208 A. 2d 322; *State v. Reams*, 277 N.C. 391, 178 S.E. 2d 65, *Cert. denied*, 404 U.S. 840; *Duffield v. Peyton*, 209 Va. 178, 162 S.E. 2d 915. Neither do the constitutional guarantees against unreasonable search and seizure prohibit a seizure of evidence without a warrant when no search is required and the seized article is in plain view. See, *U.S. v. Pate*, *supra*; *State v. Virgil*, 276 N.C. 217, 172 S.E. 2d 28; *State v. Howard*, 274 N.C. 186, 162 S.E. 2d 495; *State v. Craddock*, 272 N.C. 160, 158 S.E. 2d 25.

The court's findings relevant to this assignment of error are:

2. That Officer Joyner, Smith and Sharpless were let in the home by Mrs. Small and showed to the defendant's bedroom. There Officer Sharpless immediately recognized items of clothing that the defendant had been wearing when observed earlier that morning with blood on certain of these items;

\*   \*   \*

11. That the defendant's clothes observed by Officer Sharpless and the other officers in the defendant's bedroom were handed to the said officers by the defendant's mother; that the defendant's jacket and shoes in the pantry in the kitchen were given to the officers by the defendant's sister, Joanne Small . . . .

These findings of fact are supported by competent evidence and support Judge Walker's conclusion that "the clothes of the defendant were voluntarily given to the officers by the defendant's mother, Mildred Small, and by the defendant's sister, Joanne Small." We also note that according to all the evidence, a portion of the seized clothes were in plain view and were taken without any search. The trial judge correctly denied defendant's motion to suppress evidence relating to the clothing taken from his home.

[5] Defendant assigns as error the denial of his motion for a mistrial on the ground of prejudicial statements made by a prospective juror. The record discloses the following:

> . . . The court then stated for the record that upon the voir dire examination of the jury and after two jurors had been challenged for cause by the State and said challenge is granted by the court, the defendant moved that the voir dire examination of the jury be made a part of the record based on motions that could be made with regard to the change of venue of this trial of excessive publicity appeared. The court found that no motion had previously been filed by the defendant for change of venue and that showing of such adverse publicity in the trial as to show the prejudice to the defendant and therefore denied defendant's motion. [sic]
>
> The court stated further that during the course of the jury examination and selection by the State that a juror reported that he knew the defendant based on an incident that the defendant had been involved in. The court stated that there was no showing by this prospective juror of what the incident was or the outcome of such incident and thereafter the defendant moved for mistrial based on the statement of this juror, and the court finds that no prejudice had resulted to the defendant by virtue of the statement made by the prospective juror and that the prospective juror was excused and was not chosen as a juror and therefore the court denied the defendant's motion for mistrial.

Regulation of the manner and the extent of inquiry on the *voir dire* examination of prospective jurors is a matter largely in the discretion of the trial judge. In order for an appellant to show reversible error on appeal, he must show an abuse of discretion

on the part of the trial judge *and* resulting harmful prejudice. *State v. Young*, 287 N.C. 377, 214 S.E. 2d 763, *modified as to death sentence*, 428 U.S. 903. The allowance or refusal of a motion for mistrial is a matter resting in the sound discretion of the trial judge, and his ruling will not be disturbed absent a showing of abuse of that discretion. *State v. Birckhead*, 256 N.C. 494, 124 S.E. 2d 838.

In our opinion, the trial judge should have permitted the recording of the *voir dire* examination of prospective jurors so that defendant would have been in position to make pertinent portions of that examination a part of the record for possible appellate review. However, the record does not contain an exception to the trial judge's ruling on this motion and, therefore, is not properly before us for review. Even so, we might have, in our discretion, considered this ruling had defendant made a showing of prejudice which was so substantial as to require a new trial. However, we are unable to perceive how the failure to record the *voir dire* examination of prospective jurors could have precluded a motion for change of venue. The record discloses only one statement by one juror indicating any previous knowledge of defendant or of the case. We are therefore unable to find any substantial prejudice to defendant in that juror's isolated and unamplified statement that he knew defendant because of his involvement in another incident. We hold that the trial judge did not abuse his discretion in denying defendant's motion for a mistrial.

[6] Defendant's assignment of error number 5 is as follows:

The court erred in failing to find and to instruct the jury that the defendant's evidence raised the issue of coercion or duress as a defense to the confession.

Defendant concedes that the trial judge determines the *admissibility* of a confession. However, he argues that, upon request, the trial judge should have instructed the jurors to consider all circumstances surrounding the interrogation and arrest of defendant in determining what weight they would give to his confession.

It is true that, when a confession is admitted into evidence, it is for the jury to determine whether the statement was, in fact, made and to determine the weight, if any, to be given to the con-

fession. *State v. Jenkins*, 292 N.C. 179, 232 S.E. 2d 648. However, in assisting the jury in its search for the truth, the trial judge has wide latitude in presenting issues. He must charge the applicable principles of law and apply the law to the facts of the case without expressing an opinion concerning the sufficiency of the evidence to prove any fact. 3 Strong's N.C. Index 2d, *Criminal Law*, Section 111.

When defendant requested this instruction, the trial judge should have charged the jury that if it found that defendant made the confession then the jury should consider all of the circumstances under which it was made in determining whether the confession was truthful and the weight the jury would give to it. The trial judge instructed the jurors that they were the sole judges of the weight to be given any evidence; that they were the sole judges of the credibility of all the witnesses; that the jurors should depend on their recollection of the evidence, and not his; and that they should consider all the evidence and the argument of counsel in reaching their verdict. In light of these instructions, it is apparent that the jury was clearly informed that it should consider any evidence before it including the arrest and interrogation of defendant in determining the weight and credibility, if any, it would attach to defendant's confession.

Under the circumstances of this case, we find no prejudicial error in the failure of the trial judge to pinpoint the above instruction to the confession evidence.

This assignment of error is overruled.

[7] Defendant contends that the trial judge erred by not stating in his summary of the evidence that Dr. Phillips testified that the victim's blood was type ABO group O+.

The trial judge must charge on all substantive features of the case and recapitulate, with reasonable accuracy, the evidence and the respective contentions of the parties. However, the general rule is that unless objections to recapitulation of the evidence or statements of contentions are brought to the court's attention in apt time to afford opportunity for correction, the objections are waived. *State v. Gaines*, 283 N.C. 33, 194 S.E. 2d 839. The omission to which defendant points by this assignment of error does not concern a substantive feature of the case, and defense counsel did not call this omission to the attention of the trial judge even

when he inquired of defense counsel if there were other requested instructions. Thus the failure of the trial judge to include this testimony in his summary of the evidence does not constitute prejudicial error.

We find no merit in defendant's contention that the trial judge expressed an opinion in violation of G.S. 1-180 when he charged the jury that the State relied on both circumstantial and direct evidence.

[8]  Finally, we agree with defendant's position that sentence imposed in the assault with intent to commit rape case should be arrested. The State proceeded on the theory that Alexandria Hill was killed by defendant during an assault upon her with intent to commit rape. It is well established that a defendant who is convicted upon the theory of the felony murder rule cannot be separately punished for the commission of the underlying felony. *State v. White*, 291 N.C. 118, 229 S.E. 2d 152; *State v. McLaughlin*, 286 N.C. 597, 213 S.E. 2d 238, *modified as to death sentence*, 428 U.S. 903; *State v. Woods*, 286 N.C. 612, 213 S.E. 2d 214, *modified as to death sentence*, 428 U.S. 903; *State v. Thompson*, 280 N.C. 202, 185 S.E. 2d 666.

We have carefully considered this entire record and find no error warranting a new trial.

In the murder case: No error.

In the assault with intent to commit rape case: Judgment arrested.