Rockingham, }
Nov. 7, 1928. }

STATE *v.* JACK LAVERNE, *alias* VAN DYKE.

*Stewart E. Rowe*, solicitor, for the state.

*James F. Carens* (of Massachusetts), *Ralph J. Rinalducci* and *Samuel W. Emery*, for the defendant.

MARBLE, J. The state's evidence tended to prove the following facts:

The defendant and one Pesarki roomed together in a lodging house, the rear of which was separated from the rear of Simpson Brothers' store by an alley. One Axman, who occupied an adjoining room, testified that he had spent the evening of December 23 with the defendant and Pesarki; that they had come home with him about eleven o'clock and gone directly to their room; that a few moments later somebody (he was not positive whether one or both of them) left the room and went out, and that he heard footsteps coming back up the stairs about two hours later.

A witness who lived in the apartment directly over the Simpson store stated that he heard noises there between eleven and twelve o'clock. The commotion was such as to keep him awake for an hour or more and to cause him to look out the window in search of an officer. The noises "sounded like people throwing boxes down."

The next morning it was discovered that the store had been entered

from the rear and that two suitcases and various articles of wearing apparel had been stolen. An investigation revealed the fact that Pesarki and the defendant had disappeared. When they were apprehended later in Massachusetts, they were wearing some of the stolen clothing and had the suitcases and the rest of the property in their possession. Pesarki admitted his guilt, but the defendant claimed that he had purchased the clothing on the street from a stranger. On the witness stand he denied having made this statement and asserted that he had bought the goods from Pesarki. To impeach his veracity it was shown that he had served a house-of-correction sentence for burglary in Massachusetts and a prison sentence for abduction in New York.

The mere recital of this evidence is a sufficient refutation of the defendant's contention that his motion should have been granted. Whether, in view of his conduct before and after the burglary, his possession of the stolen property was "recent enough, or exclusive enough, or. unexplained enough" to warrant a conviction was a question of fact for the jury. *State* v. *Hodge*, 50 N. H. 510, 526. See also *State* v. *Bozek*, 81 N. H. 277.

The defendant stated on the stand that after Axman had gone to his room he and Pesarki went down stairs to the parlor; that later Pesarki went out to get some sandwiches; that the defendant waited awhile for him to return and finally went to bed; that when Pesarki came back he had the two suitcases and the clothing in question, all of which he declared had been sold to him by a sailor; that he offered to sell the defendant anything he needed and that he (the defendant) had purchased the suitcase and clothing later found in his possession.

In the course of the charge the court made use of a word which might reasonably have been construed as derogatory to the defendant's story. Exception was taken, whereupon the court promptly withdrew the word and instructed the jury to strike it out of their minds and not to let it influence them.

"In the absence of decisions in point, it may be difficult to determine the precise limit which uniform practice in this state has placed upon the discretion of the trial judge in charging the jury, as to the facts. . . . The substance of the rule as stated in the cases appears to be that the extent to which the facts shall be stated in the charge, and the commentaries to be made upon them, is for the trial judge, and that his action is not open to exception. . . .

"For a judge to inform the jury how he thought the evidence in which a fair conflict existed ought to be determined would probably

appear to all lawyers now in practice an invasion of the province of the jury. Upon the general grounds of a violation of uniform and invariable practice and a denial of the right to a fair trial by the jury, and from the manner in which the distinction between law and fact is now drawn in this state . . . all would probably agree that such a proceeding should and would vitiate a verdict found in conformity thereto; but authorities would not be wanting to sustain it." *State* v. *Newman*, 74 N. H. 10, 20, 21.

If it be assumed that the rule which obtains in England and in the federal courts that a judge may express his opinion of the facts for the assistance of the jury (Thompson, Trials (2d *ed.*), *ss.* 2292, 2293, and cases cited) is not here in force, it does not follow that the defendant must prevail, since the court in the present case expressly instructed the jury that they were not to be influenced by the word objected to. As in *State* v. *Hause*, 82 N. H. 133, 138, the charge "was explicit on the subject of the jury's function and duty to weigh the evidence." The jury were told that it was their duty not only to decide the guilt or innocence of the defendant but to determine the preliminary questions on which their ultimate decision rested. In explaining the burden of proof the presiding justice instructed them that if they were "firmly and vitally convinced" of the respondent's guilt, then he was "found guilty beyond a reasonable doubt," but that if they were not convinced within the degree of proof stated, it was their sworn duty to return a verdict of not guilty.

It is said in *State* v. *Fogg*, 80 N. H. 533, 536, that the prejudicial effect of a trial judge's ruling is not beyond remedy but can be cured by appropriate instructions. In the absence of evidence to the contrary it is presumed that such instructions are followed. *State* v. *Mannion*, 82 N. H. 518, 523; *Butler* v. *Webster*, 79 N. H. 125, and cases cited.

In *Todd* v. *Railway*, 208 Mass. 505, the trial justice in his charge made a remark tending to disparage the testimony of the plaintiff and his witnesses. The plaintiff excepted and the remark was withdrawn. *Rugg*, J., says: "It is a principle of practice in the trial of causes to a jury that an erroneous ruling made by the presiding justice either as to evidence or in the charge may be corrected at any stage, and if the ruling as made at last is sound no exception lies. It must be assumed that the jury acted upon the state of the case finally submitted to them both as to evidence and instructions."

"If the language first employed was obnoxious as the intimation of an opinion upon a disputed fact, . . . the objection is removed

by the subsequent explanatory statement made before the jury entered upon their deliberations." *State* v. *McNair*, 93 N. C. 628, 631.

"Some complaint is made of certain criticism made by the trial judge of one of the witnesses. . . . It may be admitted that the stricture should not have been indulged in, but the jury was fully and clearly instructed to disregard everything said by the court along that line and we must assume that the instruction was followed." *DeBock* v. *DeBock*, 43 Cal. App. 283, 301. See also *Holland* v. *State*, 21 Ala. App. 520; *Coulter* v. *State*, 110 Ark. 209, 214, 215; *Robinson* v. *People*, 76 Col. 416, 421; *State* v. *Gatlin*, 170 Mo. 354, 370; *State* v. *Dixson*, 80 Mont. 181, 211, 212; *Flynn* v. *State*, 183 Wis. 348, 351.

It is true that in this jurisdiction where counsel has made a prejudicial statement the withdrawal of the statement must be supplemented by a finding of the presiding judge that the trial was not rendered unfair by the remark in question. But where, as here, the presiding justice himself commits the error, the procedure prescribed in *Tuttle* v. *Dodge*, 80 N. H. 304, would be somewhat incongruous. Whether in certain cases such procedure may not be essential need not now be considered, however, since we are of the opinion that the retraction of the word complained of and the admonition to the jury, viewed in the light of the entire instructions, were of "sufficient efficacy" to demand a ruling that the use of the word had no prejudicial effect.

*Exceptions overruled.*

All concurred.