Belknap
No. 80-106

THE STATE OF NEW HAMPSHIRE

v.

JOHN FEOLE

March 11, 1981

*Dunn & Hilliard,* of Concord (*Vincent P. Dunn* orally), for the defendant.

*Gregory H. Smith,* acting attorney general (*Paul W. Hodes,* attorney, orally), for the State.

KING, J.   The defendant appeals from his conviction for criminal solicitation to commit aggravated assault (RSA 629:2) on the ground that certain evidence introduced at trial was obtained as the result of an unlawful stop and illegal search of the defendant's automobile. The defendant also argues that the charge given by the Trial Court (*Contas,* J.) was confusing and prejudicial. We reject the defendant's arguments and affirm the conviction.

On September 12, 1978, the Laconia police received a telephone call from a person identifying himself as Carl J. Nochbaur, an employee at the Christmas Island Steakhouse in Laconia. Mr. Nochbaur related that two men had made two or three visits to the restaurant while a third man remained in a black automobile. Mr. Nochbaur stated that the automobile displayed a registration which included in part "G844." Because the restaurant had been robbed only ten days earlier, Mr. Nochbaur expressed his fear of a possible imminent armed robbery.

Officer Morrison of the Laconia police responded to the call. As Officer Morrison approached the area of the restaurant, the car in question pulled into the street at a high rate of speed "leaving

rubber" on the road as it did so. At the same time a man from the restaurant leaped into the street in an apparent attempt to direct the attention of the police to the departing car. Officer Morrison pursued and stopped the vehicle, which the defendant was driving. Two passengers were in the car, Arnold D'Allessio and Steven DeFusco.

Within a short time, Captain Dougherty of the Laconia police arrived to take charge of the investigation. Officer Morrison then instructed the three men to step out of the car and patted them down for weapons. It was discovered that DeFusco was carrying a tire iron down his pant leg. At this point a third officer, Officer Kitching, requested permission to search the vehicle. Officer Kitching testified that first the defendant and then the other two men gave their consent to the search. The search of the vehicle revealed a shoulder holster under the front seat and a loaded pistol wedged beneath the rear seat. After further investigation the police arrested the defendant and charged him with criminal solicitation to commit aggravated assault.

D'Allessio and DeFusco testified at trial. Although their testimony was inconsistent in certain respects, their separate accounts of the events of September 12, 1978, were essentially the same. According to their testimony, a friend of theirs introduced them to the defendant in Providence, Rhode Island. D'Allessio and DeFusco indicated to the defendant that they were looking for a means to make some money and the defendant suggested that they each could make $150 in New Hampshire. The two men accepted this offer, and the three proceeded to Laconia. D'Allessio and DeFusco testified that the defendant asked them to "beat up or wipe out," "or kill," Tony Roux. They testified that the defendant informed them that Roux could be identified by a scar on his forehead. Their testimony indicated that D'Allessio and DeFusco made three trips into the Christmas Island Steakhouse but never found Roux. The two also testified that on the third visit to the Steakhouse the defendant gave D'Allessio a pistol to use.

The defendant was convicted of criminal solicitation to commit aggravated assault and sentenced to a term of not less than three years nor more than six years at the State prison. The defendant's exceptions were transferred to this court for review.

The defendant first argues that his conviction should be reversed because the testimony of D'Allessio and DeFusco, the holster, and the gun were obtained as the result of an unlawful stop of the

defendant. The defendant concedes that a police officer may stop and question a person he reasonably suspects is involved with the commission of a crime. *See Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *State v. White*, 119 N.H. 567, 571–73, 406 A.2d 291, 294 (1979). He argues only that the police lacked reasonable suspicion to stop him because they acted solely upon an unverified telephone tip from a person unknown to them.

In support of this contention, the defendant relies upon *United States v. Worthington*, 544 F.2d 1275 (5th Cir.), *cert. denied*, 434 U.S. 817 (1977), and *Ballou v. Commonwealth of Massachusetts*, 403 F.2d 982 (1st Cir. 1968), *cert. denied*, 394 U.S. 909 (1969), as establishing the rule that an anonymous telephone tip is incapable of supporting reasonable suspicion unless corroborated by a police officer's personal observations or specific knowledge of surrounding facts. Although the telephone tip in this case was not anonymous, the defendant argues that the rule should apply because a telephone tip from a person previously unknown to the police is no more reliable than, and therefore for practical purposes is equivalent to, an anonymous tip. While we do not necessarily agree with this assertion, we may assume it to be valid for purposes of this case because we conclude that the rule has been satisfied.

■ The evidence showed that the police received a telephone call from a person identifying himself as an employee of the Christmas Island Steakhouse and expressing fear of an imminent robbery. The caller indicated that two men had made two or three brief trips to the restaurant and that a third man waited in a car outside the restaurant. He gave a description of the car which included a partial registration. Arriving at the restaurant to investigate, the police observed a car meeting the description given by the informant pull away from the restaurant at a high rate of speed, leaving rubber on the road as it did so. Furthermore, a person leaped into the road in an apparent attempt to draw the attention of the police to the vehicle. Considering all of this evidence, we conclude that the police did not stop the defendant solely on the basis of an unverified telephone tip, but rather on the basis of the reported information and their own observations, which together gave them grounds to reasonably suspect that the defendant was involved with the commission of a crime. *See Ballou v. Commonwealth of Massachusetts, supra* at 985–86. We have no trouble in deciding that a person of ordinary caution would be justified in

believing that the action taken by the police "was appropriate." *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968).

■  The defendant next argues that the evidence taken from the car should have been excluded because it was obtained through an illegal search. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961). At trial the police testified that all three occupants of the vehicle consented to a search of the vehicle. The defendant argues, however, that because the police did not inform the occupants of their right to refuse their consent, the consent given was not voluntary and was therefore invalid.

The Supreme Court of the United States has considered and specifically rejected this same contention. *See Schneckloth v. Busta-monte*, 412 U.S. 218 (1973). In *Schneckloth*, the Court stated that whether consent is freely or voluntarily given depends upon all the circumstances and that although the person's knowledge of his right to refuse is relevant, it is not determinative. 412 U.S. at 248–49. Although this court is free to require that a person be informed of his right to withhold his consent, we are not prepared to do so at this time. *See State v. Osborne*, 119 N.H. 427, 433, 402 A.2d 493, 497 (1979).

The defendant asserts that the Supreme Court's decision in *Dunaway v. New York*, 442 U.S. 200 (1979), modifies *Schneckloth* and requires that when the circumstances surrounding a person's consent are especially coercive, the police must take affirmative steps to inform that person of his rights. The defendant reasons that the circumstances surrounding his consent were coercive and that the failure of the police to inform him of his right to refuse his consent requires us to hold the consent involuntary and exclude the evidence. We disagree. *Dunaway* does not impose an affirmative duty to inform suspects of their right to withhold their consent. In that case the Court considered whether the defendant had been "arrested" within the meaning of the Fourth Amendment. 442 U.S. at 207–16. In resolving this issue, the Court considered the fact that the police had not informed the defendant of his right to withhold his consent to accompany the police to the station only as one of the circumstances indicating that the defendant had been arrested. *See id.* at 212. The Court did not conclude that, absent such a disclosure, there could be no consent.

Finally, the defendant argues that the judge's instruction was confusing and prejudicial and that the conviction should therefore be reversed. The court read to the jury RSA 629:2 defining crimi-

nal solicitation. Amplifying upon this definition, the court included a definition of "solicitation" and "knowingly and purposely." During this part of the instruction, the court stated:

> "[The State must] show that . . . the defendant . . . knowingly asked these two individuals to commit the crime of aggravated assault or murder, whatever, whichever is the crime that's been alleged in this particular offense. . . ."

The defendant objects to that portion of the charge which raised the issue of solicitation to commit murder and argues that because the defendant was charged only with solicitation to commit aggravated assault, the charge was prejudicial.

■■ Errors in instructions to the jury may be cured and become immaterial where promptly corrected by the court. *Commonwealth v. Lammi*, 310 Mass. 159, 165, 37 N.E.2d 250, 254 (1941); *State v. LaVerne*, 83 N.H. 419, 421, 143 A. 594, 596 (1928). In this case the trial court immediately gave the further instruction that:

> "So that there won't be any question, the crime that these two young men were to have committed or that they were supposedly or allegedly solicited to commit was what we call aggravated assault. . . . You are to consider only if the State has proved beyond a reasonable doubt that the defendant solicited these two young men to commit the crime of aggravated assault."

We conclude that this instruction cured any defect in the earlier portion of the instruction.

*Affirmed.*

All concurred.