Cheshire
No. 82-339

# THE STATE OF NEW HAMPSHIRE

v.

# MICHAEL McGANN

October 26, 1983

*Gregory H. Smith*, attorney general (*Brian T. Tucker*, assistant attorney general, on the brief, and *Edna Conway*, assistant attorney general, orally), for the State.

*Joanne Green*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J.   The defendant, Michael McGann, was indicted by the Cheshire County Grand Jury for the crime of receiving stolen property. RSA 637:7. After a trial by jury, he was convicted. The defendant appeals, claiming that the Trial Court (*Dalianis*, J.) improperly denied both his motion to suppress and his motion to dismiss made after the close of the State's case. We agree that the motion to suppress should have been granted and, therefore, reverse.

The evidence presented at the suppression hearing revealed the following facts: On August 10, 1979, Cheshire County Deputy Sher-

iff William Moffitt and State Police Detective Sergeant Leonard Migneault, together with other officers, went to Ashuelot Auto Sales (Ashuelot), the defendant's place of business, with a warrant to search for a certain vehicle. While on the premises, the officers recorded a vehicle identification number (VIN) from a different vehicle, a blue and white 1975 Chevrolet pickup truck. The officers believed this truck was a stolen vehicle. Because the national crime information computer was not functioning, the officers were unable immediately to secure information regarding that VIN. Migneault told the defendant to leave the truck where it was. By the time the computer check of the VIN revealed that the number belonged to a stolen vehicle and the officers returned to retrieve the truck, it was missing from Ashuelot.

The officers speculated that the truck might be found at Hilltop Auto Sales (Hilltop), an auto repair and reconstruction business in the same area. Investigator Gerald Gosselin of the State Motor Vehicle Division's Title Bureau accompanied the officers to Hilltop to search for the truck. They first met with David Sheldon, the manager of Hilltop, who gave the officers permission to search the property for the blue and white Chevrolet truck. Sheldon generally pointed out the boundaries of the Hilltop property. Shortly thereafter, Sheldon called the defendant and informed him that the officers were looking for his property, and the defendant arrived at Hilltop a few minutes later.

Cheshire County Sheriff Kenneth Lysett and Deputy Sheriff William Moffitt extended their search along a gravel road behind the Hilltop property. They found a 1973 Dodge pickup truck approximately 150 yards from the Hilltop property and then called for Gosselin. Gosselin arrived, along with the defendant, who indicated that since the truck had his dealer plate, it must be his. Gosselin tried to open the door, but it was locked. Gosselin stated that he would have to get his tool to unlock the truck. The defendant said that that would not be necessary and pulled out a key and unlocked the door. Gosselin looked at the door for a VIN but could not find one. The Dodge truck was then seized for failure to have a VIN. The Chevrolet truck initially sought was never found.

Later, after the hidden, or secondary, VIN on the Dodge truck was located and referenced, it was determined that the truck had been stolen. A search warrant was obtained on August 15, 1979, to search Ashuelot for the missing VIN plate to the Dodge truck. While executing the warrant the following day, the officers found a "mylar sticker," a plastic sticker which is usually placed on the door post of a vehicle, and on which is located the VIN of the particular vehicle. With the mylar sticker, they also found a federal safety cer-

tification label and an application for title to a 1978 Ford Thunderbird, made out in the name of Wayne Brown. A camper on the premises of Ashuelot was also searched. Inside the camper, police found boxes with the name "Abbott" on them, containing the drug sodium pentothal.

This information, in turn, formed the basis of another search warrant, dated September 10, 1979, authorizing the seizure of the Thunderbird in Wayne Brown's possession in order to inspect that vehicle's hidden VIN. The inspection of the Thunderbird and a computer check indicated that the car belonged to Abbott Laboratories and had been reported stolen. This vehicle was the subject of the instant indictment charging the defendant with receiving stolen property. The evidence seized from this vehicle, along with the seized mylar sticker, the title application and the sodium pentothal, was the subject of the defendant's motion to suppress. These items were introduced at trial.

The defendant contends that these items should have been suppressed because they were the fruit of an illegal search, to wit, the inspection of the doorpost of the Dodge truck that took place behind Hilltop. He further argues that that inspection was carried out without a warrant, without his consent, and without probable cause to believe that a crime had been committed, and therefore, was done in violation of the fourth amendment to the United States Constitution and part one, article nineteen of the New Hampshire Constitution.

The threshold question for the court is whether the inspection constituted a search within the meaning of the State and Federal Constitutions. The State urges the court to follow case law from other jurisdictions that have held that an examination of a vehicle for the limited purpose of inspecting a VIN plate or identification number inscription is not a search. *See United States v. Forrest*, 620 F.2d 446, 454–55 (5th Cir. 1980); *United States v. Powers*, 439 F.2d 373, 374 (4th Cir.), *cert. denied*, 402 U.S. 1011 (1971); *Cotton v. United States*, 371 F.2d 385 (9th Cir. 1967).

██ ██ We have stated that "[a] search ordinarily implies, a quest by an officer of the law, a prying into hidden places for that which is concealed." *State v. Coolidge*, 106 N.H. 186, 191, 208 A.2d 322, 326 (1965), *rev'd on other grounds sub nom. Coolidge v. New Hampshire*, 403 U.S. 443, *reh'g denied*, 404 U.S. 874 (1971). We now hold under our State Constitution that an official inspection of a VIN which is not in plain view and which is located within the vehicle constitutes a search. Consequently, for the search to have been legal, it must have taken place pursuant to a warrant or one of the established

exceptions to the warrant requirement. *See State v. Theodosopoulos*, 119 N.H. 573, 578, 409 A.2d 1134, 1137 (1979), *cert. denied*, 446 U.S. 983 (1980).

The State advances a number of arguments in its attempt to demonstrate that the search was legal, notwithstanding the absence of a search warrant. It first points to former RSA 269-A:20-b (Supp. 1979) (now codified at RSA 262:11), which provides:

> "The director or his agents, including title investigators, are authorized to examine any vehicle on the premises of any new or used car dealer, at any body shop, auction, salvage yard, or any shop where vehicles are repaired or restored for the purpose of checking vehicle identification numbers or investigating any violation in the process of selling, repairing, junking, dismantling or crushing a vehicle."

The statute, the State contends, properly allows warrantless inspections because of the high degree of governmental regulation in the field. *See United States v. Biswell*, 406 U.S. 311 (1972). The defendant responds that his truck was located off the property of Hilltop, and so Investigator Gosselin was not acting within the confines of the statute, and responds further that the statute should be declared unconstitutional to the extent it permits warrantless inspections. *See Donovan v. Dewey*, 452 U.S. 594 (1981).

We agree with the defendant that Investigator Gosselin in searching for the truck did not act within any authority conferred on him by RSA 269-A:20-b because he was then outside the Hilltop "premises." Therefore, we do not reach the constitutional question.

The State next maintains that the defendant consented to the inspection of his vehicle when he unlocked the door to the truck himself. His voluntary consent, according to the State, acted as a waiver of his constitutional rights. The defendant contests the voluntariness of his consent, stating that he produced the keys in an atmosphere of coercion that vitiates any consent given.

Where the State seeks to justify a warrantless search by alleging that the defendant consented, "the State must show from all the surrounding circumstances that the consent given was free, knowing and voluntary." *State v. Osborne*, 119 N.H. 427, 433, 402 A.2d 493, 498 (1979). The burden of proof on the State is to demonstrate voluntary consent by a preponderance of the evidence. Whether the consent given by the defendant was in fact voluntary or was, rather, the product of coercion, express or implied, is a question of fact to be determined by the trial court from the totality of

the circumstances. *See State v. Radziewicz,* 122 N.H. 205, 211, 443 A.2d 142, 146 (1982). We will not disturb the trial court's finding unless it is without support in the record.

██ The trial court, in ruling that the search of the defendant's truck was proper, primarily relied on RSA 269-A:20-b. It found unimportant the fact that the defendant's truck was located outside the Hilltop premises at the time of the search. In this regard, the trial court erred on a question of law. As a secondary basis for its rulings, the court in its order on the motion to suppress added:

> "Moreover, this Court finds that the defendant consented to the [sic] Mr. Gosselin's inspection of the VIN plate by producing the keys to the Dodge and unlocking it himself. Given that Mr. Gosselin had the right to inspect the vehicle, the fact that the defendant may have felt compelled to unlock the door to avoid damage to his auto is not of great consequence."

It is evident from this passage that the court's finding of consent is predicated on an assumption that the coercion felt by the defendant is legally irrelevant due to the authority that was presumptively vested in Investigator Gosselin. In making this assumption, the trial court erred on a matter of law; therefore, the court's finding of consent cannot be upheld.

██ The State argues lastly that the inspection was legal because the officers had the proper justification for the warrantless search, whether the appropriate standard be a "reasonable suspicion," *State v. Feole,* 121 N.H. 164, 167, 427 A.2d 43, 45 (1981), or "probable cause to believe" that a crime has been committed, *State v. Beede,* 119 N.H. 620, 626, 406 A.2d 125, 129 (1979), *cert. denied,* 445 U.S. 967, *reh'g denied,* 446 U.S. 993 (1980). In this case, the vehicle in question was not stopped for the inspection while it was being operated on a public way. Rather, it was on private property, locked, and the ownership of the vehicle was not in doubt in light of the defendant's admission. In these circumstances, the proper standard for a warrantless search is probable cause plus exigent circumstances. *See State v. Beede supra.*

██ The trial court made no finding of probable cause plus exigent circumstances. Our examination of the record indicates that no such finding could be supported. Consequently, we rule that the warrantless search of the defendant's vehicle was done in contravention of the defendant's rights under part one, article nineteen of the New Hampshire Constitution. Since the fruits of that search provided the primary basis for the objects that were the subject of the

defendant's motion to suppress, that motion should have been granted. *See State v. Hanson,* 113 N.H. 689, 313 A.2d 730 (1973).

In the light of our holding that the defendant's motion to suppress should have been granted, we need not rule on the defendant's exception to the denial of his motion to dismiss.

*Reversed.*

SOUTER, J., did not sit; the others concurred.