Hillsborough
No. 88-164

THE STATE OF NEW HAMPSHIRE

v.

EDDIE S. JONES, a.k.a. STEVE E. JONES

June 28, 1989

*Jeffrey R. Howard*, acting attorney general (*Janet C. Gorman*, attorney, on the brief, and *Mark Howard*, attorney, orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. The defendant, Eddie S. Jones, a.k.a. Steve E. Jones, was convicted after a jury trial of felonious sexual assault and sentenced to two to four years in the State Prison. On appeal, the defendant claims that the Superior Court (*Dalianis*, J.) erred in finding that he had permitted police officers to enter his motel room, where he was arrested and evidence was seized. We affirm.

On June 27, 1987, at approximately 2:30 a.m., a fourteen-year-old male flagged down a Nashua police cruiser. He alleged that a short time earlier, he had been taken by car to a motel room where he had been sexually assaulted. After speaking with the youth, the police officers took him back to the motel, where he identified the defendant's car in the parking lot. Based on the license plate number of the car which had been identified, the police obtained a name which they then matched to the motel registration to obtain a room number. They then proceeded to the defendant's room.

Although what occurred next is the subject of dispute, both parties agree that the police officers identified themselves as police to the defendant through the closed motel room door, and that the defendant opened the door, whereupon the police entered the room. There, the police officers spoke with the defendant, arrested him and seized evidence from the room.

In January, 1988, the defendant filed a motion to suppress all items of evidence which had been seized from the motel room. Although, following a hearing, the Superior Court (*Dalianis*, J.) ruled favorably on the motion with regard to some of the items, it held that "the State has proven by a preponderance of the evidence that defendant permitted the Nashua Police entry to the motel room and that items taken by [a particular police officer] were both in plain view and incident to a lawful arrest and, therefore, are not suppressed." Following a jury trial at which this evidence was introduced, the defendant was convicted of felonious sexual assault.

On appeal, the defendant claims that the trial court erred in finding that he had permitted the police officers to enter his motel room. The defendant challenges this finding of consent because if we find that the court erred, the defendant can claim that the items found to be "in plain view and [seized] incident to a lawful arrest" should have been found inadmissible. *See State v. Cote*, 126 N.H. 514, 525, 493 A.2d 1170, 1178 (1985) (plain view doctrine applicable only if police officer is lawfully at place where he inadvertently perceives item); *State v. Morse*, 125 N.H. 403, 405, 480 A.2d 183, 185 (1984) (evidence seized pursuant to arrest in violation of fourth amendment rights is inadmissible). In response to the defendant's

claim, the State first argues that the issue of consent was not properly raised below. *See Daboul v. Town of Hampton*, 124 N.H. 307, 309, 471 A.2d 1148, 1149 (1983). After reviewing the record, we find that the issue of consent was before the court during the hearing on defendant's motion to suppress and that the court in fact ruled upon the issue. We therefore address the defendant's claim.

 Whether the defendant consented to the police entry into his room is a question of fact to be determined by the trial court. *State v. McGann*, 124 N.H. 101, 105, 467 A.2d 571, 574 (1983). The court must determine, based on the "totality of the circumstances," whether the State has met its burden of proving by a preponderance of the evidence, *id.* at 105–06, 467 A.2d at 574, that the consent was "free, knowing, and voluntary." *State v. Osborne*, 119 N.H. 427, 433, 402 A.2d 493, 498 (1979). We will disturb the trial court's finding only if it is without support in the record. *State v. McGann, supra* at 106, 467 A.2d at 574.

At the hearing on the defendant's motion to suppress, the defendant and two police officers testified. Patrolman Scott Childs stated:

> "As we knocked on the door, we first didn't get a response. Again we knocked on the door. And we got a response from a male subject within, inquiring who was at the door. At this time, [I] identified myself as a police officer and told him to come to the door, we'd like to speak with him. At this time, the male subject inside the room yelled out, 'F--- you.'
>
> Again we knocked on the door, stating that we were the police and we were requesting him to come to the door that we again would like to talk with him. A couple of minutes went by . . . . [T]he defendant . . . came to the door, opened the door, saw that we were police officers, says 'What's the problem? Come on in.' And we at that time proceeded into the—into the hotel room."

Patrolman Jamie J. Provencher testified that after knocking on the door:

> "The defendant . . . yelled through the door, asking who it was. We identified ourselves as Nashua police officers and that we wanted to speak to him. First—first reply to us, I believe it was 'F--- you.'

We identified ourselves again, advising him what we were doing there that, we wanted to speak to him. He then immediately opened up the door and allowed us in the motel room. . . .

When he opened up the door, he stepped aside, welcoming us—welcoming us into the room."

In contrast, the defendant testified that he was sleeping when he heard a banging at the door.

"I asked who it was. And they identified themselves as police . . . .

[T]hey told me—asked me—they said they wanted to talk to me. And I went to the door and I unlocked the door, turned the doorknob to open the door, . . . . and they were against the door. The chain lock stopped the door from opening. I told him to slow down, and I pushed back the door slide . . . .

[I]t was like they were against the chain . . . . [T]hey told me to open the door, and I undid the chain. And when I undid the chain and turned the knob down, and they came and told told me to sit . . . ."

Based on this testimony and a judgment that the "defendant's credibility is seriously suspect by virtue of admitted lies," the court found that the State had met its burden of proving that the defendant had "permitted the Nashua Police entry to the motel room."

The defendant argues that the trial court erred in making this determination because the circumstances preceding the consent were "rife with coercion." He notes that the entry occurred at 3:00 a.m., that the defendant initially responded to the knocking with an obscene refusal to open the door, and that the police, ignoring this refusal, persisted in demanding entry, never advising the defendant of his right to refuse consent. The defendant's contention that his obscene refusal indicates a desire to refuse entry is somewhat ironic given his testimony at the hearing disputing police testimony that he had made an obscene refusal, or in fact any verbal refusal, to the police. We agree that the hour of entry, the initial response by the defendant, and the police officers' persistence in making the request for entry are properly considered in examining the "totality of the circumstances." However, the existence of these factors does not compel a holding that the defendant's consent had been coerced.

We have before held that a suspect need not be aware of his right to refuse entry in order voluntarily to consent to such entry. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 234 (1973); *State v. Osborne*, 119 N.H. at 433, 402 A.2d at 497. In addition, a suspect who initially refuses to allow entry may subsequently voluntarily consent to entry. *See State v. Radziewicz*, 122 N.H. 205, 211, 443 A.2d 142, 146 (1982); *United States v. Pulvano*, 629 F.2d 1151, 1157 (5th Cir. 1980). Finally, the early hour of the request, while relevant, does not require a finding of involuntariness. *See Gautreaux v. State*, 52 Wis. 2d 489, 493, 190 N.W.2d 542, 544; *cf. State v. Sullivan*, 130 N.H. 64, 70, 534 A.2d 384, 386 (1987) (early hour of interrogation did not render confession involuntary). The record provides ample evidence to support the court's finding of consent. *See State v. Laro*, 106 N.H. 500, 213 A.2d 909 (1965).

The defendant also argues that the trial court improperly focussed on the defendant's apparent lack of credibility in deciding whether the State had met its burden of proving consent. We find no merit in this contention. There is no indication that the court failed to consider the State's evidence; in fact, the court expressly held that the State had met its burden of proof. The reference to the defendant's credibility merely indicates how the court resolved the conflicting evidence presented at the hearing. Similarly, we find no merit in defendant's contention that it is unclear from the court's order whether it applied the correct standard in determining the issue of consent. Although the court did not use the word "voluntary" in its order, the court's use of the word "permission," following an accurate statement of the burden of proof placed on the State for a finding of voluntary consent, indicates that "permission" denoted voluntary consent, rather than coerced compliance, as the defendant claims.

Finally, the defendant asks us to use our superintending power, *see* RSA 490:4, to vacate the superior court's finding of consent because testimony given by police officers at the trial was in conflict with testimony offered by police officers at the hearing on the motion to suppress. At the hearing, Officer Childs testified that he "knocked" on the motel room door, "identified" himself as a police officer, requested the defendant to come to the door, and was expressly invited into the motel room by the defendant. At trial, Officer Childs testified that he and his fellow police officers "banged on the door," stating "Nashua Police Deparment. Open the door," several times. The defendant then "opened the door, stepped back into his room, indicating to us to come in." At trial, Patrolman Lyle Smith, who had not testified at the hearing, stated: "Again,

I spoke through the door, told Mr. Jones, . . . that we weren't going to leave until we got a response from the door. And at that point, the door opened." We note that the defendant did not claim at the hearing on the motion to suppress that the police made this statement.

RSA 490:4 provides that this court "shall have general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses." We have already found, however, that the trial court did not err in finding that the defendant consented to the police entry, given the evidence before it at the hearing. The court, therefore, did not abuse its discretion in allowing the introduction of the evidence at the trial. Finding no abuse of the trial court's discretion, we decline to exercise our general superintending power. *See State v. Murray*, 104 N.H. 38, 39–40, 178 A.2d 507, 508–09 (1962) (declining to exercise superintending power where court did not abuse its discretion); *Patten v. Newton*, 102 N.H. 444, 447, 159 A.2d 809, 811 (1960) (declining to exercise superintending power where record described no abuse of discretion by trial court). We therefore affirm the decision of the superior court.

*Affirmed.*

All concurred.