Rockingham
No. 90-266

THE STATE OF NEW HAMPSHIRE

v.

CARLOS GONZALEZ DIAZ

October 4, 1991

*John P. Arnold,* attorney general (*Clyde R. W. Garrigan,* senior assistant attorney general, on the brief and orally), for the State.

*W. Kirk Abbott, Jr.,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

HORTON, J.   The defendant was convicted by a jury of possession of a controlled drug with intent to distribute, in violation of RSA 318-B:2 (Supp. 1990). He appeals the denial by the Superior Court (*McHugh,* J.) of his motion to suppress, claiming that: (1) the police lacked the reasonable suspicion required to detain the defendant; (2) the scope of the detention exceeded its permitted purpose; (3) the subsequent entry into the defendant's room constituted a warrantless entry; and (4) the "sweep" search of the defendant's room was unreasonable. We hold that the entry into the defendant's room was not supported by probable cause or by any other permitted justification, and consequently reverse.

While on routine patrol after midnight of August 27, 1989, Salem Police Officer Paul Marchand noticed a single car parked in a remote area of the Fireside Motel parking lot, near the Fishland Restaurant, which was closed for the evening. In driving toward the vehicle, he noted four persons in it, and also spotted the defendant near the car alongside the motel. After parking his police jeep, Officer Marchand walked toward the car and observed a female passenger in the back seat emptying her pocketbook onto the floor of the car. At that point he ordered all of the car's occupants to place their hands on the seat or dashboard in front of them, and directed the defendant, who was approximately six feet from the parked car, not to move while he radioed for assistance. Two other officers arrived shortly thereafter. On the floor of the car, Officer Marchand found a pipe, a matchbox containing brown powder, and a vial containing packets of folded paper. At both the trial and the hearing on the motion to dismiss, he testified that, based upon his then twelve years of experience, he believed these items to be drug paraphernalia, and heroin or cocaine. He thereupon arrested all four occupants of the parked car.

Officer Marchand then turned his attention to the defendant. Because of his suspicion that the defendant might have been involved in a transaction with the arrested persons, he requested identification

and asked the defendant what he was doing in the area. The defendant denied any particular purpose for his presence, and indicated that his identification was back in his motel room with his wife. According to the officer's testimony, he told the defendant, "let's go back to your room and get it," to which the defendant replied, "no problem." Officer Marchand and two additional officers escorted the defendant back to his motel room door and knocked on the door. A woman with a child opened the door, and she and the defendant conversed briefly in Spanish. None of the officers understood Spanish, but they thought they understood the words "social security." The defendant and the woman entered their motel room. Although not invited into the room, the three police officers followed the defendant and the woman, neither of whom protested, into the room.

Once inside, the defendant remained by the door while the woman, apparently at his direction, went to a nightstand in the room. When she opened the nightstand drawer, Officer Marchand followed her and observed cut-up magazine strips, commonly used to package drugs, on top of the nightstand. Inside the drawer he saw small packets similar to those found in the car. The police thereupon arrested the defendant. A search of the room revealed a beaker and vial in the kitchen area, a paper bag containing forty-five additional packets of cocaine, and a golfball-size "rock" of cocaine.

■ The defendant contends on appeal that the warrantless entry of the motel room was unreasonable under part I, article 19 of the New Hampshire Constitution and the fourth and fourteenth amendments to the Federal Constitution. The State argues that this issue was not properly preserved for appeal, and that the defendant consented to the police's entry into the room. The State carries the burden of establishing, based upon the totality of the surrounding circumstances, that the consent was free, knowing and voluntary. *See State v. Jones*, 131 N.H. 726, 728, 560 A.2d 1159, 1160 (1989). This burden must be sustained by a preponderance of the evidence. *See id.*

As a preliminary matter, we will analyze the defendant's argument under the protections afforded by part I, article 19 of the New Hampshire Constitution. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983). To that extent, we look to federal cases merely for guidance. *See In re Certain Scholarship Funds*, 133 N.H. 227, 229–30, 575 A.2d 1325, 1326–27 (1990).

■ Our review of the motion to suppress indicates that the validity of the warrantless entry was raised below. The motion asserts that "the Police Officer abused and exceeded his authority under the

initial investigation of the motor vehicle" through his "expansion of the scope of his investigation to the Defendant and the Defendant's hotel room." In addition to the oral argument presented to the court, this adequately raised before the trial court the issue of the validity of the warrantless entry of the defendant's motel room. *See State v. Baird,* 133 N.H. 637, 640, 587 A.2d 1313, 1315 (1990) (although defense counsel's arguments did not clearly address specific issue, he nevertheless brought the defendant's claim to the trial court's attention).

■    In response to the request to produce identification, the defendant indicated that it was in his nearby room, and readily agreed to get it. Given the defendant's response, it appears that there was ample evidence from which the court could conclude that "'the consent given [to go to the motel room] was free, knowing and voluntary.'" *State v. McGann,* 124 N.H. 101, 105, 467 A.2d 571, 574 (1983) (quoting *State v. Osborne,* 119 N.H. 427, 433, 402 A.2d 493, 498 (1979)).

■    While the facts as to the change of location from the parking lot to the motel door reveal the defendant's voluntary consent, the actions thereafter require us to conclude that the entry was not consensual. Our analysis begins with the scope of the consent given by the defendant. *See State v. Pinder,* 126 N.H. 220, 224, 489 A.2d 653, 655 (1985). Officer Marchand and two other officers went with the defendant to the door. Of note on the issue of authority, it was Officer Marchand, not the defendant, who knocked at the door. This begins the chain of circumstances which suggest that the officers were leading, and expanding the scope of consent, rather than accepting an invitation by the defendant to enter the premises.

The request to which the defendant consented entailed going *"back* to your room to get it." Accepting an invitation to return to one's residence in order to produce identification sufficient to answer an officer's questions is significantly different from inviting the police to enter a private area and observe all subsequent activities. The response to the request conveyed that the defendant wished to return to the room, where he could then produce his identification. It implied that the defendant would produce identification, not that the defendant and the police would enter and *search* for the identification. Procuring the identification could be accomplished by various means, many of which are non-intrusive to the defendant's privacy interests. Thus, agreeing to the officer's request to return to the motel room does not, by itself, constitute a waiver of any privacy rights.

This interpretation is also not unreasonable in light of the fact that the defendant was not yet under arrest, but was merely seeking identification. Nothing in the officer's request, or in the defendant's response, suggested the additional need for entering the room, or for following and observing the defendant (or his girl friend) while they opened various containers in the room. Particularly in view of the significant additional privacy interests which arise at the threshold of the living quarters, *see State v. Pinder*, 128 N.H. 66, 73, 514 A.2d 1241, 1245 (1986) (citing *Oliver v. United States*, 466 U.S. 170, 178 (1984)), a determination that the defendant knowingly and voluntarily included this area within the scope of his consent is unfounded.

We look then to the defendant's conduct upon his return to the motel door to see if he intended to waive this privacy interest. We can find no indication of such free, knowing and voluntary consent in the defendant's acts or words. Officer Marchand, not the defendant, knocked on the door. When it was opened, the defendant did not initially enter, but spoke with his girl friend, apparently instructing her to get the identification. Although it is unclear who entered first, when they entered the room, the defendant remained by the door with Officer Marchand, and did not move about. The three officers did not enter the room on invitation, but because, as Officer Marchand testified, the officers felt uneasy permitting the girl friend to retrieve the identification. The officer's statement, "I'm not going to let him have access fully to the room without myself [going in]," shows that the act of entering was non-consensual. Under these circumstances we can find no support for the argument that the defendant's acts gave the officers the right to roam freely about the motel room. To the contrary, the defendant's actions of staying by the door and asking his girl friend to bring his identification to the officers indicate otherwise. The fact that the defendant or his girl friend did not protest the entry of the three officers does not constitute consent. *See, e.g., United States v. Most*, 876 F.2d 191, 199 (D.C. Cir. 1989). Similarly, assuming that the defendant did consent to the officers' entering and waiting in the room while the girl friend retrieved the identification, such consent does not give the officers the authority to search the room. *State v. MacDonald*, 129 N.H. 13, 20, 523 A.2d 35, 39 (1986). Therefore, justification other than consent must be available if we are to sustain the seizure of the evidence.

The State argues that an officer may enter where there is a "compelling need for immediate official action and a risk that the delay inherent in obtaining a warrant will present a substantial threat of imminent danger to life or public safety." *State v. Theodosopoulos*,

119 N.H. 573, 580, 409 A.2d 1134, 1138–39 (1979), *cert. denied,* 446 U.S. 983 (1980). The State contends that because the defendant was being investigated for a drug transaction, because guns and other weapons are often associated with drug trafficking, *see United States v. Walters,* 904 F.2d 765, 769 (1st Cir. 1990), and because the defendant was speaking a foreign language with his girl friend, there is a reasonable basis for concluding that there was a threat of danger to the officers. This argument fails because the State cannot meet the first requirement for the exigency justification; namely, the showing of a sufficient basis to establish probable cause. *See State v. Theodosopoulos, supra* at 578, 409 A.2d at 1137 (probable cause required for warrantless search under exigent circumstances exception at least as great as that required to support a warrant). While the record, as we have reviewed it above, discloses a reasonable basis for suspecting the defendant's involvement, it is barren of specific facts which could support a finding of probable cause to enter and search the motel room. *See State v. Carroll,* 131 N.H. 179, 184, 552 A.2d 69, 73 (1988).

Because we have concluded that the officers' warrantless entry into the motel room violates part I, article 19, we need not address the defendant's other arguments. *See State v. Pond,* 133 N.H. 738, 739, 584 A.2d 770, 770 (1990). The defendant's motion to suppress the evidence seized in the motel room should have been granted, and his conviction must be reversed.

*Reversed.*

All concurred.