2006 UT App 221

STATE of Utah, Plaintiff and Appellee,

v.

Steven D. HUMPHREY, Defendant and Appellant.

No. 20040962–CA.

Court of Appeals of Utah.

June 2, 2006.

Julie George, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen. and Brett J. DelPorto, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BENCH, P.J., GREENWOOD, Associate P.J., and DAVIS, J.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 Defendant Steven D. Humphrey appeals his convictions of possession of a controlled substance with intent to distribute and cultivation of marijuana, both second degree felonies, *see* Utah Code Ann. § 58–37–8(2)(a)(i) (2002); possession of a dangerous weapon by a restricted person, a third degree felony, *see* Utah Code Ann. § 76–10–503(3) (2003); and possession of drug paraphernalia, a class B misdemeanor, *see* Utah Code Ann. § 58–37a–5(1) (2002). On appeal, Defendant argues that the trial court erred in admitting evidence seized in violation of the Fourth Amendment. We affirm.

## BACKGROUND

¶ 2 Sometime before midnight on September 5, 1999, Cecil Gurr, chief of police of Roosevelt, Utah, and a member of the Uintah Basin Narcotics Strike Force (the Strike Force), went to Defendant's residence. Accompanying Chief Gurr were other members of the Strike Force, including Ammon Manning, a deputy with the Duchesne County Sheriff's Office.

¶ 3 The Strike Force had received a tip from a confidential informant that Defendant was growing marijuana on his property, which was located in a rural area of Duchesne County. However, the Strike Force did not seek to obtain a search warrant because they considered the information "stale."

¶ 4 Chief Gurr and Deputy Manning approached Defendant's motor home, which was inoperable and had been converted into a trailer home, consisting of a single room with a wood-burning stove. The officers called out Defendant's name, identified themselves as police officers, knocked on the door, and asked if they could enter Defendant's home.

¶ 5 Defendant admitted the two officers into his home. Deputy Manning used his flashlight to illuminate the interior of the home as they entered because there were no lights on. Defendant sat on the foot of the bed and conversed with the officers.

¶ 6 Chief Gurr asked Defendant about marijuana growing on the property. Defendant replied that he did not know what they were talking about. He then asked the officers if they had a warrant. When Chief Gurr said they did not, Defendant asked them to leave. As the officers turned to exit the home, Deputy Manning's flashlight illuminated a bowl of small marijuana plants near the door. He brought the plants to Chief Gurr's attention, whereupon Defendant started toward the door. The officers then arrested Defendant, placed him in handcuffs, and took him outside.

¶ 7 At the time of Defendant's arrest, there were several people sleeping on a wooden deck nearby, including Defendant's granddaughter, her boyfriend, and two younger children. After the officers arrested Defendant, they asked Defendant's granddaughter if there were any weapons around. She told them there was a handgun inside the motor home. The officers went back inside the home and retrieved a loaded revolver from the middle of the bed where Defendant had been sitting.

¶ 8 After Defendant was arrested and taken to jail, the officers obtained a search warrant. They subsequently discovered sixty-one mature marijuana plants growing outside the motor home, as well as juvenile plants inside the home. The officers also discovered water tanks believed to be used to water the plants, various paraphernalia, and scales.

¶ 9 Defendant moved to suppress evidence seized following his arrest. On the evening in question, Chief Gurr carried a portable

tape recorder in his shirt pocket and recorded the interaction between the officers and Defendant. A transcript and the recording were admitted into evidence at Defendant's suppression hearing. According to the transcript, the following exchange took place between the officers and Defendant:

Chief Gurr: Hey. Hey. Hey, Steve. Where's Steve at? Hey, where's Steve? Could you step out here and talk to us, please? Hey, Steve, could you come out here for a minute? ... Uintah Basin Narcotics Strike Force. We need to talk to you.

Defendant: Hush. [directed to a barking dog.]

Chief Gurr: We need to talk to you for a minute. Do you mind?

Defendant: No.

Chief Gurr: Can we come inside for just a minute?

Defendant: Uh huh.

¶ 10 Defendant argued that the transcript was inaccurate because he did not say "uh huh" when Chief Gurr asked him if the officers could enter. As a result of Defendant's concerns, the tape was played in open court.

¶ 11 At the conclusion of evidence, the trial court denied Defendant's motion to suppress. The court noted that the tape recording "wasn't prepared under ideal circumstances," but because it generally supported the officers' account, the court accepted their testimony. The court also stated that there were "glaring problems" with Defendant's testimony. Ultimately, the court found that the officers announced who they were and who they were looking for; they were invited inside; there were no lights in the residence; Deputy Manning's use of a flashlight to illuminate the darkened home was "reasonable"; and there was no indication the officers were "casting ... about to try to illuminate areas."

¶ 12 In sum, the trial court found that the officers had permission to enter Defendant's home, that they responded appropriately in leaving when Defendant asked them to, and that the marijuana was in plain view. The court also found that finding the gun in the bed was pursuant to a valid search incident to arrest, but took the issue under advise-

ment, offering defense counsel the opportunity to research whether the search incident to arrest doctrine applied when a person was taken from a home, as well as when a person was taken from an automobile. Counsel agreed to conduct further research on the issue. However, according to the record on appeal, counsel did not provide the court with additional caselaw or memoranda.

¶ 13 A jury convicted Defendant of one count of cultivating a controlled substance, one count of possession of a controlled substance with intent to distribute, one count of possession of a dangerous weapon by a restricted person, and one count of possession of drug paraphernalia. Defendant appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 14 On appeal, Defendant first alleges that he did not consent to the warrantless police entry into his home. Defendant argues that the trial court therefore erred in failing to suppress the evidence seized as a result of the search.

[1–3] ¶ 15 "Consent is a factual finding that should be made based on the totality of the circumstances." *State v. Hansen*, 2002 UT 125, ¶ 48, 63 P.3d 650. Because a trial court is in a unique position to assess witness credibility and weigh evidence, we may not substitute our judgment concerning a question of fact unless the trial court's finding is clearly erroneous. *See id.* Moreover, "[v]oluntariness is primarily a factual question." *State v. Thurman*, 846 P.2d 1256, 1262 (Utah 1993). If a court concludes that consent was not voluntary, "no further analysis is required: the consent is invalid, and the proffered evidence must be excluded." *Id.*

¶ 16 Defendant next makes two related arguments regarding the trial court's failure to suppress evidence. He first contends that the trial court erred in denying his motion to suppress the marijuana because the plants were discovered as a result of the officer's use of a flashlight in Defendant's home, which Defendant alleges was an illegal search. Second, he argues that the trial court erred in determining that the discovery of the handgun in Defendant's bed resulted from a proper search incident to arrest.

¶ 17 "We review the factual findings underlying the trial court's decision to grant or deny a motion to suppress evidence using a clearly erroneous standard." *State v. Veteto*, 2000 UT 62,¶ 8, 6 P.3d 1133 (quotations and citations omitted). However, the trial court's conclusions of law based on these findings are reviewed for correctness, with a degree of discretion given to the trial court's application of the legal standard to the facts. *See id.*

## ANALYSIS

### I. Warrantless Entry

¶ 18 Defendant first argues that he did not consent to the warrantless entry into his home. As a result, he urges that the evidence obtained from the officers' search was illegal and the trial court erred in failing to suppress it.

¶ 19 "[I]t has long been established that in the absence of a valid search warrant, '[t]he State must demonstrate that the circumstances of the [search or] seizure constitute an exception to the warrant requirement.'" *State v. Earl*, 2004 UT App 163,¶ 18, 92 P.3d 167 (second and third alterations in original)(quoting *State v. Wells*, 928 P.2d 386, 389 (Utah Ct.App.1996)) (additional quotations and citation omitted), *cert. denied*, 106 P.3d 743 (Utah 2004). The permissibility of the officers' actions turns on whether the encounter between the officers and Defendant was consensual, *see State v. Thurman*, 846 P.2d 1256, 1262 (Utah 1993), such that the officers were "lawfully present," *State v. O'Brien*, 959 P.2d 647, 649 (Utah Ct.App. 1998) (quotations and citation omitted).

¶ 20 Absent a warrant or facts that demonstrate an exception to the warrant requirement, any evidence obtained as a result of the search must be suppressed. *See Earl*, 2004 UT App 163 at ¶ 18, 92 P.3d 167. One exception to the warrant requirement is when an officer discovers evidence in plain view. *See State v. Grossi*, 2003 UT App 181,¶ 9, 72 P.3d 686. "A seizure is valid under the plain view doctrine if (1) the officer is lawfully present, (2) the item is in plain view, and (3) the item is clearly incrimina-

ting." *O'Brien*, 959 P.2d at 649 (quotations and citation omitted).

¶ 21 The trial court noted that Chief Gurr's tape recording of the encounter was unclear in places. Nonetheless, the court found that the officers knocked on Defendant's door and identified themselves. The court also found that Defendant invited the officers inside and asked them to leave only after discovering they did not have a search warrant. Significantly, the tape does not support Defendant's claim that the officers told him "they did not need a warrant," or that the officers "just barged in" after pounding on the door of Defendant's home. Although the trial court commented that the "uh huh" attributed to Defendant in response to Chief Gurr's request that they be allowed into the home was unclear, the court stated that the tape otherwise corroborated the officers' account of the incident. The court also observed that Defendant's recollection of the evening's events was of questionable accuracy.

¶ 22 On appeal, Defendant avers that even if he allowed the officers into his home, his consent was not voluntary. Defendant insists that a combination of factors—including the late hour, the additional Strike Force members outside the motor home, the presence of small children near the trailer home, and his sleepy mental state—show that any consent he might have provided was not voluntary.

¶ 23 "The case law holds that a consent which is not voluntarily given is invalid. Generally, whether the requisite voluntariness exists depends on the totality of all the surrounding circumstances—both the characteristics of the accused and the details of police conduct." *State v. Arroyo*, 796 P.2d 684, 688–89 (Utah 1990) (quotations and citations omitted). "Consent is not voluntary if it is obtained as 'the product of duress or coercion, express or implied.'" *State v. Bisner*, 2001 UT 99,¶ 47, 37 P.3d 1073 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). Factors indicating a lack of duress or coercion include:

1) the absence of a claim of authority to search by the officers; 2) the absence of an exhibition of force by the officers; 3) a

mere request to search; 4) cooperation by the owner of the [property]; and 5) the absence of deception or trick on the part of the officer.

*Id.* (alteration in original) (quotations and citations omitted).

¶ 24 Applying these factors to the instant case, we turn to the question of whether Defendant voluntarily consented to the officers' entry into his home. In determining whether the officers used coercive tactics to obtain Defendant's permission to enter his home, we consider the characteristics of the entry. *See State v. Harmon,* 910 P.2d 1196, 1208 (Utah 1995); *State v. Thurman,* 846 P.2d 1256, 1263 (Utah 1993).

¶ 25 The record does not support Defendant's claim that the officers "push[ed] their way into the home." Instead, the record reflects, and the trial court found, that the officers identified themselves and announced they were looking for Defendant, whereupon Defendant invited the officers inside. Other than Defendant's testimony that he asked at the door whether the officers had a warrant and refused to admit them when they said they did not, which the trial court stated was of questionable accuracy, there was nothing on the tape or elsewhere in the record to indicate that the officers demanded to enter Defendant's residence or stated they did not need a warrant.[1] Moreover, Defendant's appellate counsel fails to address or otherwise refute the tape recording or the transcript of the recording that provided the basis for the trial court's ruling.

¶ 26 Defendant nonetheless contends that his consent was involuntary because of the circumstances at the time. One factor courts consider when reviewing the characteristics of consent is whether the incident occurred "late at night." *Harmon,* 910 P.2d at 1208; *see also State v. Wolfe,* 398 So.2d 1117, 1121 (La.1981) (finding no valid consent where defendant answered door at 2 a.m. to

discover two uniformed officers, each "equipped with a service revolver, handcuffs, a nightstick, and a walkie-talkie radio"); 4 Wayne R. LaFave, *Search and Seizure* § 8.2(b) at 63–64 (2004) (noting that "the atmosphere is certainly more coercive when the citizen-police confrontation comes about by the police rousing a person out of bed in the middle of the night."). *But see State v. Jones,* 131 N.H. 726, 560 A.2d 1159, 1161 (1989) (stating that the early hour of the request, the defendant's initial response, and the persistence of police are all "properly considered in examining 'the totality of the circumstances,'" but that the "existence of these factors does not compel a holding" of coercion).

¶ 27 In the instant case, the officers knocked on Defendant's door at "about midnight." Although Defendant's brief describes his condition at that time as "groggy" from lack of sleep, that claim is contradicted by his record testimony that he was "coherent" by the time he answered the officers' knock. At most, even if the late hour tends to weigh against voluntariness, under the totality of the circumstances, other factors, including the fact that the officers identified themselves and sought Defendant's permission to enter his home, as well as their willingness to leave when Defendant asked them to do so, coupled with Defendant's cooperation, indicate that Defendant's consent was voluntary and not coerced. *See State v. Bisner,* 2001 UT 99,¶ 47, 37 P.3d 1073.

¶ 28 Because there is nothing in the record to suggest Defendant's "will was overborne, or that his capacity for self-determination was critically impaired," *State v. Hansen,* 2002 UT 125,¶ 60, 63 P.3d 650, the trial court did not err in denying Defendant's motion to suppress the evidence seized from Defendant's trailer.[2] Defendant's argument on this issue fails.

---

1. Defendant's granddaughter and her boyfriend both testified that they did not hear Defendant invite the officers inside. Additionally, both testified that they heard Defendant ask the officers if they had a warrant when they first knocked on the door. However, their testimony was contradicted by Chief Gurr's tape recording. Based on the testimony of Chief Gurr and Deputy Manning, as well as the tape recording, the trial court found that Defendant invited the officers inside.

2. We find no merit to Defendant's argument that the presence of children sleeping outside his motor home contributed to the coerciveness of the officers' request to enter.

## II. Plain View

■ ¶ 29 Defendant next argues that Deputy Manning's use of a flashlight to illuminate the motor home constituted an illegal search in violation of the Fourth Amendment. Defendant specifically argues that the marijuana plant would not have been in plain view had Detective Manning not searched the room with a flashlight.

■ ¶ 30 The trial court found that there were no lights on inside the trailer and that Deputy Manning was required to use his flashlight for illumination. Moreover, the trial court also ruled that it was reasonable for police officers to use a flashlight to navigate a darkened home. We agree.

> [I]t has long been the law that objects falling within the plain view of an officer from a position where he is entitled to be are not the subject of an unlawful search. "What a person knowingly exposes to the public ... is not a subject of Fourth Amendment protection." For an officer to look at what is in open view from a position lawfully accessible to the public cannot constitute an invasion of a reasonable expectation of privacy.

*State v. Holden,* 964 P.2d 318, 321 (Utah Ct.App.1998) (alteration and omission in original) (quoting *State v. Lee,* 633 P.2d 48, 51 (Utah 1981)) (additional citations omitted).

■ ¶ 31 In the instant case, the record establishes that Officer Manning used his flashlight to illuminate the interior of the motor home after the officers were allowed inside by Defendant. The record does not support Defendant's allegation that he "repeatedly asked the officers to leave [his] home," or that Officer Manning "[shined] ... his flashlight around the room to search for contraband." Moreover, "the use of a flashlight to assist the natural vision at night does not make an 'observation' a 'search.'" *Lee,* 633 P.2d at 51; *see, e.g., United States v. Dunn,* 480 U.S. 294, 305, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) (determining that "officers' use of the beam of a flashlight, directed through the essentially open front of respondent's barn, did not transform their observations into an unreasonable search within the meaning of the Fourth Amendment.").

■ ¶ 32 When Defendant asked the officers to leave, they started for the door, and only then did they spot the marijuana plants in plain view. "'Once inside the house, [an agent may not] exceed the scope of his invitation by ransacking the house generally, but he may seize anything in plain view.'" *State v. McArthur,* 2000 UT App 23,¶ 23, 996 P.2d 555 (alteration in original) (quoting *United States v. Wright,* 641 F.2d 602, 604 (8th Cir.1981)) (additional quotations and citation omitted); *see also State v. Harris,* 671 P.2d 175, 179 (Utah 1983) (stating that a government agent does not engage in a search that implicates the Fourth Amendment if he observes incriminating evidence from a place he has a right to be).

¶ 33 Because the marijuana plants were in plain view, we conclude that Deputy Manning's limited use of a flashlight to illuminate the darkened trailer and aid in entering and exiting, as well as his incidental discovery of the marijuana plants, did not implicate the Fourth Amendment. In making this determination, however, we limit our ruling to the facts in this case and express no opinion as to whether the outcome would be different if a flashlight or similar instrument were used more extensively or for a purpose other than to aid in navigation in a darkened area.

## III. Search Incident to Arrest

■ ¶ 34 Finally, Defendant urges that the trial court erred in determining that the handgun found in his bed was admissible because it was a search incident to arrest. Because we determine that this issue was waived, we do not reach the merits of this argument.

¶ 35 At the conclusion of the suppression hearing, the trial court tentatively denied defense counsel's motion to suppress the gun, but invited defense counsel to research the issue of whether a home may be searched incident to arrest once a defendant has been removed from the home. The record does not contain any indication that counsel researched the issue or provided the trial court with a supplemental memorandum. Therefore, this argument was waived. *See State v. Hansen,* 2002 UT 114,¶ 13, 61 P.3d 1062 (ex-

plaining that issues not raised before the trial court are usually waived and cannot be raised on appeal, and that even if an issue has been raised, "the record must clearly show that it was timely presented to the trial court *in a manner sufficient to obtain a ruling thereon.*" (additional quotations and citation omitted)). Defense counsel's failure to provide a supplemental memorandum effectively waived this issue. Therefore, we do not consider it. *See id.*

## CONCLUSION

¶ 36 The trial court correctly determined that Defendant's consent in allowing the officers to enter his home was voluntary. We therefore affirm the trial court's decision to admit the evidence seized as a result of the search. Additionally, based on the facts of the instant case, the use of a flashlight to illuminate Defendant's home did not implicate the Fourth Amendment. Finally, trial counsel's failure to submit a supplemental memorandum waived the issue of whether the trial court erred in denying the motion to suppress the gun. Therefore, we do not consider this issue.

¶ 37 Accordingly, we affirm.

¶ 38 WE CONCUR: RUSSELL W. BENCH, Presiding Judge, and JAMES Z. DAVIS, Judge.